Joan L. Murphy et al., Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Argued April 6, 1983, before Judges WILLIAMS, JR., DOYLE and BARBIERI, sitting as a panel of three.

*Alan M. Lerner,* with him *Jeffrey Ivan Pasek* and *Manya L. Kamerling,* for petitioners.

*Ellen K. Barry,* with her *Cecilia Macri,* for respondent.

OPINION BY JUDGE BARBIERI, September 28, 1983:

Fourteen former and current employees (Petitioners) of Crown Cork and Seal Company (Crown) appeal here from an order of the Pennsylvania Human Relations Commission (Commission) disposing of two complaints filed against Crown and Local 266, Sheet Metal Workers' International Association, AFL-CIO (Union). We affirm.

On December 22, 1970, the Commission instituted a complaint, on its own motion, against Crown and the Union making the following allegation of improper conduct:

3. On or about to wit, December 22, 1970 the complainant alleges that the respondent Company engages in unlawful employment practices which are discriminatory with respect to female employes, because of their sex, in hiring, assignment, seniority, transfer, salary, overtime, promotion, denial of training, and layoff. It is further alleged that the respondent Union concurs in and aids and abets the discriminatory practices of the respondent company.

On June 11, 1971, a former employee of Crown, Elizabeth C. McNasby, also filed a complaint with the Com-

mission in which she alleged that Crown and the Union "consorted in the lay-off of the complainant because of her sex, FEMALE, and have prevented her, as well as other females, from enjoying equal job opportunities at Crown Cork and Seal Company." Following the procedures specified in Section 9 of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §959, the Commission instituted investigations into each of these complaints, and found probable cause to credit the allegations of its complaint and the McNasby complaint on April 6, 1972 and June 20, 1972, respectively. The Commission then commenced conciliation efforts, and on October 26, 1972 issued Investigative Findings detailing the evidence it had compiled of the alleged discriminatory conduct of Crown. This evidence tended to show that Crown discriminated against women with respect to hiring, training, job assignments, layoffs, transfers, promotions, salary levels, and the availability of overtime. The Union then filed a written response to the Investigative Findings alleging, *inter alia*, that it had no control over the policies of Crown.

Although the Commission's conciliation efforts subsequently proved unsuccessful, the Commission took no further action on either the McNasby or its own complaint until the Pennsylvania Supreme Court issued its decision in *Pennsylvania Human Relations Commission v. United States Steel Corp.*, 458 Pa. 559, 325 A.2d 910 (1974). In *United States Steel*, the Commission had filed a complaint against the United States Steel Corporation (U.S. Steel) which contained an allegation of discriminatory conduct nearly identical to that found in the Commission's December 22, 1970 complaint against Crown and the Union. Interrogatories were then sent to U.S. Steel, U.S. Steel refused to answer them, and the Commission responded by filing an equity action addressed to this Court's

original jurisdiction seeking an order directing U.S. Steel to respond. Preliminary objections were filed, and in *Pennsylvania Human Relations Commission v. United States Steel Corporation,* 10 Pa. Commonwealth Ct. 408, 311 A.2d 170 (1973), we dismissed the Commission's action because (1) we lacked equity jurisdiction over the matter and (2) the Commission's complaint failed to meet the particularity requirement of Section 9 of the Act, the relevant portion of which reads as follows:

> Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission a verified complaint, in writing, which shall state the name and address of the . . . employer . . . alleged to have committed the unlawful discriminatory practice complained of, *and which shall set forth the particulars thereof.* . . . The Commission upon its own initiative . . . may, in like manner, make, sign and file such complaint. . . . (Emphasis added.)

On appeal, our Supreme Court affirmed solely on the basis that the Commission's complaint failed to meet the particularity requirements of Section 9. In response to this decision, the Commission filed an Amended Complaint against Crown and the Union on October 27, 1975, naming itself and thirteen former and current employees of Crown as the complainants, in which it described in great detail the alleged discriminatory conduct of Crown and the Union. This complaint, in addition to seeking specific forms of relief for each of the individually named complainants, also sought relief ''in the form of status adjustments, back wages and/or restoration of lost benefits'' for the following classes of individuals:

> (a) All female employees placed on layoff status since July 9, 1969 for any period of time,

whether or not they were ever recalled and whether or not their recall rights have since expired;

(b) All female employees who were on lay-off status, on July 9, 1969 who were not recalled or did not accept recall subsequent to July 9, 1969 whether or not their recall rights have since expired;

(c) All female employees who since July 9, 1969 have for any period of time been employed in jobs classified at Code 19 or below;

(d) All females who since July 9, 1969 have been rejected for employment by the Respondent Company.

Crown subsequently filed an answer to this amended complaint denying each of the allegations of discriminatory conduct, and in "New Matter" asserted, *inter alia,* (1) that the Commission's amended complaint was barred by the doctrine of laches, (2) that the Commission was not authorized to seek class-wide relief, and (3) that certain of the individually named complainants lacked standing to file a complaint since they were no longer employed by Crown. The Union, for its part, simply submitted a letter informing the Commission that it would not file an answer. The Commission subsequently conducted a new investigation, made a new probable cause determination, reinstituted conciliation efforts, and issued amended findings summarizing the results of its investigation, even though the Commission's Amended Complaint, by its very terms, purported to be an amended version of the Commission's December 22, 1970 Complaint, and not a new cause of action. Thereafter, the Commission's conciliation efforts once again proved to be unsuccessful, and on February 22, 1977, Crown filed a motion to dismiss alleging, *inter alia,* that the Amended Complaint had not been filed within the

ninety day time period specified in Section 9 of the Act. Thirty-seven days of hearings followed between the dates of October 30, 1978, and June 17, 1980, and after evaluating, for over a year, the voluminous record created during these hearings, the Commission issued, on September 29, 1981, a sixty-eight page adjudication and order. In this adjudication the Commission found as facts, *inter alia,* (1) that Crown, with a few minor exceptions, maintained a system of sex-segregated job classifications, (2) that men were assigned to job classifications with higher ratings than those offered women employees, (3) that Crown, with the Union's acquiesence, maintained separate seniority lists for male and female job classifications, (4) that these separate seniority lists were used for the purpose of ascertaining transfer, promotion, lay-off, and recall rights, (4) that in 97.7% of the cases where females had been laid off of their jobs on the basis of their position on the female seniority list, men with less seniority had been retained in male jobs, (5) that in the period between July 9, 1969, and December 31, 1975, female employees at Crown had been laid off more often and for greater lengths of time than men even though females, as a group, had more seniority than males, (6) that the average rate of pay for female employees during this period was less than that for male employees, (7) that Crown hired fifty new male employees, but no new female employees, between the dates of July 9, 1969 and December 31, 1975, (8) that male employees occasionally filled temporary vacancies in female job classifications, but that females were never asked to fill temporary vacancies in male job classifications, (9) that the Union refused to file grievances or to institute litigation on behalf of female employees even though the female employees complained to the Union about Crown's sexually discriminatory practices, and (10) that the Union, in vio-

lation of the provisions of its own constitution, did not submit withdrawal cards to laid off employees, who were frequently women, so that the laid off employees would be excused from paying union dues during the period of their layoffs, or reinstatement fees upon being recalled to work. The Commission then concluded, as a matter of law, *inter alia,* (1) that its December 22, 1970 complaint failed to satisfy the particularity requirements of Section 9 of the Act, and was hence a "defective complaint and a nullity[,]" (2) that its October 27, 1975 complaint, although purporting to be an amendment of its December 22, 1970 complaint, was in fact a new cause of action, and hence did not toll the ninety day time limitation specified in Section 9, (3) that all of the allegations of discriminatory conduct advanced by the individually named complainants in the Commission's October 27, 1975 complaint, except those advanced by Theresa Reed, involved discriminatory conduct occurring more than ninety days prior to the filing of the Commission's Amended Complaint, and hence were time barred, (4) that " [d]elays in the processing of this matter . . . albeit attributable primarily to PHRC staff, do not give rise to a defense of laches and have not deprived Crown or Local 266 of due process of law[,]" (5) that the Commission is authorized by the provisions of Section 9 of the Act to initiate complaints on behalf of classes of aggrieved persons, (6) that Crown's treatment of female employees between the dates of July 9, 1969 and December 31, 1975 with respect to "hiring, job assignment, job transfer, compensation, layoff, and recall from layoff" constituted a continuing pattern and practice of discrimination on the basis of sex in violation of the provisions of Section 5(a) of the Act, 43 P.S. §955(a), (7) that the Union violated the provisions of Sections 5(c) and 5(e) of the Act, 43 P.S. §§955(c) and 955(e), by failing to process griev-

ances filed by female employees, by encouraging certain female employees to sign waivers of their equal employment opportunity rights, by failing to seek enforcement of provisions of collective bargaining agreements it negotiated prohibiting discriminatory conduct, and by "requiring the payment of dues while employees were in layoff status and/or by requiring the payment of reinstatement fees as a condition of obtaining reinstatement to employe status from layoff[,]" a requirement which the Commission concluded disproportionately affected female employees "in the context of Crown's sex-segregated layoffs. . . ." The Commission further concluded that that portion of Elizabeth McNasby's June 11, 1971 complaint pertaining to her individual claim for relief satisfied the particularity requirements of Section 9 of the Act, but that her complaint was not sufficiently specific with respect to claims for similarly situated female employees, thereby making that portion of the complaint "null and void." Finally, as for the merit of McNasby's individual claim, the Commission reached the following conclusion:

> The sex-segregated job classification and seniority systems historically employed by Crown inhibited the movement of Elizabeth McNasby upward through the production and maintenance ranks at Crown as occurred with other women. This left her with artificially low department seniority in 1971. Thus, continued layoffs she suffered in her inspection position were illegal consequences of a seniority system which disproportionately disadvantaged women and are therefore remediable.

In a ten page order accompanying its adjudication, the Commission ordered, *inter alia,* monetary relief for both Elizabeth McNasby and "the class of females who were employed or who possessed employment

rights at Crown's Plant No. 1, production and maintenance unit, during the period July 30, 1975 to December 31, 1975.'' These amounts represented the difference between the pay the women would have received if there had not been a sex-based seniority system at Crown, and the amount of pay they actually received, during the periods of time the Commission awarded relief, as shown in a statistical analysis which was offered into evidence at one of the Commission hearings. In the case of Elizabeth McNasby, the Commission awarded relief from the date she filed her complaint, through December 31, 1975. The rest of the female employees, however, were only awarded relief for the five month period running from July 30, 1975, a date three months prior to the filing of the Commission's Amended Complaint, through December 31, 1975. The Commission concluded that it could not award monetary relief to female employees, other than McNasby, for periods of time prior to July 30, 1975. The Commission also concluded that ''the absence of sufficient evidence relating to the period following December 31, 1975, the burden of production of which belonged to complainants, precludes any monetary relief for the period after that date.'' The Commission next ordered Crown to make good faith offers of reinstatement, as jobs became available, and in the relative order of plant seniority ''within the production and maintenance unit[,]'' to each female employee who was laid off while a male of lesser seniority was retained, and additionally issued a number of directives designed to integrate Crown's shift, department, and plant seniority systems. Crown was also directed to implement an affirmative action program, and the Union, for its part, was ordered (1) to conduct its activities, and to advocate the interests of its members, in a nondiscriminatory manner, (2) to cease the practice of either collecting union dues while its mem-

bers were laid off, or requiring the payment of reinstatement fees when members returned from involuntary layoffs, and (3) to reimburse all union dues and reinstatement fees paid by female employees at Crown who were on layoff status or who were reinstated at any time between July 30, 1975 and the effective date of the Commission's order. The Commission expressly absolved the Union of any liability for the award of monetary relief that was made to the females who had suffered diminished earnings, however, stating that it felt that Crown was primarily responsible for this diminution in earnings.

Following the issuance of this adjudication and order, a request for reconsideration was filed by the Commission's staff which the Commission granted on November 27, 1981. After the submission of further legal memoranda to a Commission hearing panel, a further supplementary opinion and order was issued, which affirmed the initial results reached in the Commission's first adjudication and order. In this supplementary opinion, the Commission noted that while it had the power to afford monetary relief to the female employees of Crown, employed as of July 30, 1975, for periods of time prior to that date, it had elected not to do so in this case concluding that

> [t]he interests of the PHRC in litigating discrimination claims are frequently identical to the interests of individual discriminatees. But the primary goal of the agency must be to vindicate the public interest. This is especially so in PHRC initiated complaints. We feel our Final Order in this case, with its forceful injunctive-type relief, accomplishes the vindication of the public interest while fairly balancing the relevant private interests.

The Commission similarly concluded that while it could have held the Union jointly liable for all of the

monetary damages awarded, it had elected not to do so. The present appeal, filed by McNasby and the thirteen individually named complainants in the Commission's Amended Complaint, followed.

Before this Court, Petitioners initially advance a number of legal theories in support of the proposition that the Commission erred as a matter of law, or abused its discretion, by not affording complete monetary relief to all female employees employed at Crown ninety days prior to the filing of the Commission's original complaint and thereafter. We shall address these issues seriatim.

Petitioners first contend, as we understand it, that the Commission's initial complaint was sufficiently specific, given the factual context of the present case, to meet the specificity requirements of Section 9 of the Act, and that its technical defects, if any, were minor, and could be cured by amendment, as opposed to the filing of a new cause of action. We disagree.

To support their assertion that the Commission's original complaint complied with the specificity requirements of Section 9 of the Act, Petitioners note than an employee of Crown, Mary Martin, filed a formal complaint against Crown on April 15, 1970, and the Union on April 20, 1970, in which she complained about specific discriminatory practices, and that the Commission made, after an investigation, a probable cause determination on the Crown complaint prior to October 15, 1970, when Ms. Martin withdrew the complaints. Petitioners also make reference to a report found in the record before us, written by a Commission field representative, which indicates that eleven female employees of Crown, including Ms. Martin, visited the Commission's Philadelphia office on February 27, 1970 to complain about specific discriminatory practices at Crown, but refused to file a formal

complaint at that time when they were informed they would have to file such a complaint under their own names. By making reference to these facts, Petitioners apparently seek to establish that Crown and the Union were engaging in discriminatory practices, and that they were made aware of this fact through the investigative process initiated by the Martin complaint. Petitioners then conclude that since Crown and the Union had such knowledge, the Commission was excused from alleging the discriminatory practices complained of with particularity when it filed its original complaint. Such a conclusion, however, misperceives the function of a complaint filed pursuant to the procedures specified in Section 9.

In addressing the problem of discrimination, which may take myriad forms defying statutory description, the General Assembly has provided a procedure in Section 9 whereby an alleged discriminator is put on notice, through the filing of a complaint, of the specific conduct which is alleged to be discriminatory. Subsequent to the receipt of this notice, and prior to the holding of a formal hearing on the charge, the alleged discriminator is informed, following a Commission investigation, as to whether or not the Commission finds probable cause to credit the allegations of the complaint, and if such a probable cause determination is made, conciliation efforts are initiated in an attempt to resolve the matter. Only after the alleged discriminator is informed of the specific conduct complained of, has been informed that the Commission has found probable cause to credit the allegations of the complaint, and has refused, after conciliation efforts, to modify its behavior, does the matter proceed through the sometimes lengthy and expensive process of a formal hearing, a process, the resort to which, the General Assembly intended to minimize through the procedures specified in Section 9. It is clear, there-

fore, as our Supreme Court held in *United States Steel*, that the purpose of the filing of a complaint under the procedures specified in Section 9 is not simply to inform an alleged discriminator that it will be made the subject of an investigation, as Petitioners allege in their brief to this Court, but instead is designed to inform the alleged discriminator of the specific conduct complained of, so that it will know, after a probable cause determination is made, and conciliation efforts are initiated, what specific meritorious charges are being brought against it, and more importantly, what voluntary changes it can make to avoid litigation. Here, we believe that the Commission correctly concluded that the Commission's original complaint failed to perform this function. As the above quoted portion of the Commission's original complaint shows, neither Crown nor the Union were informed as to what specific acts of misconduct they were being *charged* with, but instead were simply informed, in essence, that they were being charged with a violation of the Act and that an investigation would commence. Such a complaint does not comply with the requirements of the Act. *United States Steel*. Moreover, it is clear, in our view, that specific allegations of misconduct presented in withdrawn causes of action, or in investigative reports, is not a substitute for the filing of specific *charges* against an alleged discriminator under the mandatory procedure outlined above.

Also, of course, we find no merit in Petitioners' assertion that the lack of specificity in the Commission's original complaint could be cured by amendment. Although Section 9 provides in part that "the complainant shall have the power reasonably and fairly to amend any complaint[,]" it would clearly be unreasonable and unfair to allow a complainant to toll the ninety day time limitation specified in Section 9, perhaps as in the present case by a number of years,

through the filing of an action which does not comply with the mandatory requirements of Section 9, and which does not accurately inform the alleged discriminator of the specific charges being advanced against it, and which would later be amended to enumerate specific charges after an investigation and conciliation efforts had been completed. Accordingly, we believe that the Commission, having concluded that the Commission's original complaint lacked specificity, properly concluded that it could not be cured by amendment. *See Junk v. East End Fire Department,* 262 Pa. Superior Ct. 473, 396 A.2d 1269 (1978). We also believe, contrary to Petitioners' assertion in their brief, that this conclusion is not contrary to our Supreme Court's decision in *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.,* 476 Pa. 302, 382 A.2d 731 (1978). In *St. Joe Minerals,* the Supreme Court simply concluded that an amended complaint, which added specific allegations of discriminatory conduct to an earlier complaint, complied with the specificity requirement of Section 9. The court did not have before it, however, and did not decide, the question of whether the amended complaint was a new cause of action, or whether it was simply an amendment of the earlier complaint.

Petitioners additionally allege that the Commission erred as a matter of law by concluding that Elizabeth McNasby failed to satisfy the specificity requirement of Section 9 in that portion of her complaint brought on behalf of other female employees at Crown. As we noted above, however, that portion of the McNasby complaint simply stated that respondents have prevented her, "as well as all other females, from enjoying equal job opportunities. . . ." This statement clearly failed to notify either Crown or the Union of the specific practices being complained of.

Petitioners next allege that Crown and the Union waived their right to challenge the specificity of the Commission's original complaint, since they did not raise an objection to the specificity of that complaint until February 22, 1977, well after the filing of the amended complaint and Crown's answer thereto. Although we note that 1 Pa. Code §35.54 provides that a respondent may file a motion to dismiss "with his answer[,]" and that 1 Pa. Code §35.35 provides that answers, unless otherwise ordered, shall be filed within twenty days of the date of service of a complaint, since this issue was not raised below, and since there has been no reason shown why it could not have been raised below, it will not be addressed here. See Section 703(a) of the Administrative Agency Law, 2 Pa. C. S. §703(a).

The next allegation of error advanced by Petitioners is their assertion that their due process and equal protection rights were violated by the Commission's failure to permit the correction of the Commission's original complaint. In support of this contention, Petitioners rely on the recent decision of the United States Supreme Court in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). We believe that this case is clearly distinguishable.

In *Logan*, a complainant filed a timely complaint with the Illinois Fair Employment Practices Commission (Commission) alleging that he had been discriminated against on the basis of a physical handicap unrelated to ability. The applicable Illinois statutory law provided that once such a complaint was filed, the Commission was to convene a factfinding conference within 120 days. Apparently through inadvertence, this conference was not held until 138 days after the filing of the complaint, and the respondent subsequently moved to dismiss the action on this basis. When the Commission refused, the respondent peti-

tioned the Illinois Supreme Court for a writ of prohibition, and that court subsequently held that the complainant's petition had to be dismissed. Upon a further appeal, however, the United States Supreme Court reversed. In its majority opinion, the Supreme Court concluded that the right to pursue a discrimination complaint under the applicable Illinois statutory law was a species of property right protected by the due process clause of the fourteenth amendment, and that the complainant's due process rights had been deprived by the dismissal of his complaint since the complainant's interest in pursuing his complaint was paramount to any interest the state might have in conducting conferences within 120 days. In a separate concurring opinion authored by Justice BLACKMUN and joined in by three other justices, Justice BLACKMUN additionally concluded that the Illinois statute's 120 day hearing provision violated the equal protection clause of the United States Constitution, since there was no rational basis for distinguishing those complaints processed by the commission within 120 days, and those which were processed later. Here, even if we were to assume that the right to file a discrimination complaint under the provisions of the Act is a species of protected property right which may not be deprived by an aribitrary procedural rule not rationally related to any compelling state interest, the fact remains that the original complaint in this case was filed by the Commission, and not the Petitioners here, and did not purport to be brought on behalf of any specific individuals or class of individuals. Hence, we do not believe that Petitioners have any constitutionally protected interest in the Commission's original complaint. Furthermore, even if Petitioners had such an interest, we believe that the Act's specificity requirement is rationally related to the state's interest in having respondents adequately informed of the

specific charges being brought against them prior to the initiation of investigations and conciliation efforts. We reject, therefore, Petitioners' due process and equal protection arguments.

Petitioners finally make two allegations of abuse of discretion by the Commission: (1) its failure to award monetary damages to female employes for periods of time prior to July 30, 1975; and (2) in relieving the Union of joint liability for the monetary damages awarded, since it specifically found that the Union aided and abetted the discriminatory job classification and seniority scheme which led to those damages. We disagree with both contentions.

First of all, as to both allegations, we must note that the Commission's power to fashion remedies is virtually plenary and exclusive. Section 9 of the Act provides, in relevant part that

[i]f, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and issue and cause to be served . . . an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employes, with or without back pay . . . as, in the judgment of the Commission, will effectuate the purposes of this act. . . .

As our Supreme Court noted in the case of *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association,* 453 Pa. 124, 306 A.2d 881 (1973), our scope of review of a Commission decision to order a particular remedy or not is limited. There the court noted "that the expertise of the Commission in fashioning remedies is not to be lightly re-

garded[,]'' *id.* at 134, 306 A.2d at 887, and concluded that Commission orders pertaining to remedies should not be disturbed on appeal '''*unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.*' '' *Id.* at 134, 306 A.2d at 887 (emphasis in original) (quoting *Fibreboard Paper Products Corp. v. N.L.R.B.*, 379 U.S. 203, 216 (1964)). Hence, the question that is before us is whether the Commission's refusal to award monetary damages for a period of more than five months is a patent attempt to achieve an end other than one which can fairly be said to effectuate the policies of the Act.

Bearing in mind that the Commission's discretion to prescribe remedies, because of the Commission's, and not our, expertise in such matters, is broad enough to accomplish whatever overall relief will effectuate the purposes of the Act, we cannot say that the extent of relief granted here was an abuse of discretion. Thus, we cannot substitute our view for the discretionary judgments of the Commission in limiting monetary damages to the period July 30, 1975 to December 31, 1975, in light of its extensive grants of injunctive relief. Also, we can find no abuse of discretion cognizable by us in the Commission's judgment in not making the Union jointly liable for the monetary damages awarded, since we believe that the Commission could have reasonably concluded that it was unfair to make the dues paying members of that Union ultimately responsible for the monetary award, and since there is no indication of record that Crown, a substantial company, will not be able to pay the monetary award.

ORDER

Now, September 28, 1983, the order of the Pennsylvania Human Relations Commission in the above captioned matter dated May 10, 1982, is affirmed.