486 A.2d 388

Joan L. MURPHY, Lorraine R. Mason, Edith L. McGrody, Marie Pekala, Henrietta Elliott, Catherine Beres, Virginia Knowles, Ann Jacyszyn, Peggy Felmey, Eleanor Neyer, Doris Yocum & Elizabeth McNasby, on behalf of themselves and all others similarly situated, Appellants,

v.

COMMONWEALTH of Pennsylvania, Pennsylvania Human Relations Commission, and Crown Cork and Seal Company, Inc., and Sheet Metal Production Workers' Union, Local 266, Appellees.

Supreme Court of Pennsylvania.

Argued June 19, 1984.

Decided Jan. 9, 1985.

Allan M. Lerner, Jeffrey Ivan Pasek, Manya L. Kamerling, Stanley M. Schwarz, Ann A. Nevel, Philadelphia, for appellants.

Cecilia Macri, Ellen K. Barry, Dauphin Co., Harrisburg, for appellee Pa. Human Relations Com'n.

Steven P. Gallagher, Michael Stack, Philadelphia Co., Jerome Hoffman, Philadelphia, for appellee Crown Cork and Seal Co., Inc.

Mark P. Muller, Philadelphia, for appellee Sheet Metal Production Workers Union Local 266.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

McDERMOTT, Justice.

Appellants have brought this appeal to challenge an order of the Commonwealth Court which affirmed a decision of the Pennsylvania Human Relations Commission.

In February of 1970, eleven female employees of Crown Cork and Seal, Inc. (Company) went to the offices of the Pennsylvania Human Relations Commission to complain that the Company, with the assistance and acquiescence of their union, the Sheet Metal Production Workers Union-Local 266 (Union), was discriminating against them and all other female production employees, on the basis of sex. At this time these women voiced their displeasure over the Company's and Union's actions, but no one among them filed an individual complaint.

In April, 1970, one of the eleven women, Mary Martin, filed an individual complaint. However, this complaint was withdrawn in October of that same year.

In December 1970, based in part on the information brought to its attention by the above parties, the Commission, *on its own motion,* filed a "Commissioner's Complaint" against the Company and the Union. This complaint consisted of two pages and made general allegations concerning "unlawful employment practices." [1] There was no

1. The relevant allegations as contained in paragraph 3 were:
   On or about to wit (sic), December 22, 1970 the complainant alleges that the respondent Company engages in unlawful employment practices which are discriminatory with respect to female employees, because of their sex, in hiring, assignment, seniority, transfer,

mention in this complaint of any of the individual complainants.

On June 11, 1971, appellant Elizabeth McNasby filed an individual complaint, in which she alleged that she was "laid off without regard to her seniority from her position of inspector, because of her sex." [2] This complaint was eventually joined with the 1970 Commissioner's complaint for purposes of administrative processing.

In April, 1972, the Commission, acting in accordance with the Pennsylvania Human Relations Act (Act),[3] issued a finding of probable cause and initiated conciliation efforts. *See* 43 P.S. § 959. By mid 1972, counsel for both the Union and the Company had entered appearances.

On October 16, 1974, this Court handed down a decision in *Pennsylvania Human Relations Commission v. U.S. Steel Corp.*, 458 Pa. 559, 325 A.2d 910 (1974). Therein we held that a Commissioner's complaint that merely stated general allegations of discriminatory practices was invalid, in that such a complaint failed to satisfy the "particularity" requirement of Section 9 of the Act, 43 P.S. § 959. This decision was relevant in the present context since the Commissioner's complaint which instituted this action was substantially the same as the one dismissed in *U.S. Steel.*

On October 27, 1975, the Commission filed a second complaint against the Company and the Union. This second complaint, designated as an "Amended Complaint," set forth detailed allegations of unlawful sex discrimination, and listed the following women as individual complainants: Eleanor Neyer, Joan Murphy, Sarah Cooper, Margaret Fel-

> salary, overtime, promotion, denial of training and layoff. It is further alleged that the respondent Union concurs in and aids and abets the discriminatory practices of the respondent Company.

2. She further alleged that:
   > ... the respondents consorted in the lay-off of the complainant because of her sex, FEMALE, and have
   > prevented
   > her, as well as all other females, from enjoying equal job opportunities at Crown Cork and Seal Company.

3. Act of October 27, 1955, P.L. 744, § 9, as amended.

mey, Lorraine Mason, Virginia Knowles, Doris Yocum, Edith McGrody, Marie Pekala, Theresa Cheplick, Henrietta Hunter, Ann Jacyzyn and Theresa Reed. Despite having had no contact with the Commission for almost five years, these women had been contacted by investigators of the Commission for the purpose of filing this "Amended Complaint," and were requested to file affidavits in support of the discriminatory charges. However, at the time this second complaint was filed only Theresa Reed was employed by the Company.[4]

This "Amended Complaint" was also joined with the original complaint (and the McNasby complaint) for purposes of administrative processing. Thereafter, on April 19, 1976, a finding of probable cause was made by the Commission staff.

Responding to this "Amended Complaint" the Company filed an answer and new matter. The Union declined to file an answer, but submitted a letter indicating that they did not believe that an answer was required.

Pursuant to statute the Commission undertook conciliation efforts, which failed; and a public hearing was directed to be held before a panel of Commissioners. Due to extensive prehearing litigation no hearing was held until October 30, 1978. Once begun, however, the hearings required 37 days.

Prior to these hearings, in February 1977, the Company had filed a motion to dismiss the "Amended Complaint." In the memorandum of law accompanying this motion, the Company argued that the original 1970 complaint lacked sufficient particularity, and therefore both complaints should be dismissed. The Commission reserved its ruling on this motion pending completion of the public hearing.

On September 29, 1981, the Commissioners issued their "Findings of Fact, Conclusions of Law, Opinion and Final

4. Ms. Jacyzyn was laid off in 1966, while complainants Neyer, Murphy, Felmey, Mason, Knowles, Yocum, McGrody, Pekala, Cheplick and Hunter were laid off for the final time between 1969 and 1971. Ms. Cooper retired on disability in February, 1974.

Order." Their ultimate conclusion was that the Company had engaged in practices which constituted "one of the most blatant patterns of sex discriminatory practices that has ever been brought to (the) Commissioners' attention."[5] Commissioners' Opinion, Dkt. Nos. E–4027; E–4249, p. 38.

The Commissioners also concluded that: (1) the original complaint was insufficiently pleaded and was a "nullity"; (2) the McNasby complaint was sufficiently particular but applicable only to her as an individual complainant; and (3) the "Amended Complaint" was effectively an original complaint unto itself. They further concluded that, as for the remaining complainants, the 90 day statute of limitation set out in Section 9 of the Act, 43 P.S. § 959, barred all but Theresa Reed from recovering any tangible relief.

The Commission ordered monetary relief for Elizabeth McNasby, to be computed from the date she filed her complaint through December 31, 1975; and also ordered monetary relief for "the class of females who were employed or who possessed employment rights at Crown's Plant No. 1, production and maintenance unit, during the period July 30, 1975 to December 31, 1975." *Id.* at 59.

The Commission also directed the Company to implement an affirmative action program; to make good faith offers of reinstatement to each female employee who was laid off while a male of lesser seniority was retained; and to integrate their shift, department, and plant seniority systems.

Though the Commission absolved the Union of any liability for the award of monetary relief,[6] the Union was ordered to: conduct its activities in a non-discriminatory manner; cease collecting union dues while its members were laid off; and reimburse all union dues and reinstatement fees paid by female employees who were on layoff status or who

5. This conclusion was not appealed by the Company and its validity is not an issue in this action.

6. The Commissioners based this decision on their conclusion that it was the Company that was primarily responsible for the women's diminution in earnings.

were reinstated at any time between July 30, 1975 and the effective date of the Commission's order.

Following this opinion and order a request for reconsideration was filed by the Commission's staff. This request was granted on November 27, 1981, and counsel was permitted to submit further legal arguments: one of which was the purported waiver by the Company and the Union of raising the issue of the defective original complaint. Thereafter a supplementary opinion and order were issued, affirming the original order, with slight modifications. Complainants appealed this order to the Commonwealth Court, which affirmed.[7] Upon petition we granted allocatur. We also affirm.

In pursuing this appeal the complainants have raised the following issues: whether the 1970 Commissioner's complaint tolled the statute of limitations; whether the "Amended Complaint" dated back to the original complaint and effectively cured the defective pleading; whether the failure of appellants to raise, prior to their petition for reconsideration, the timeliness of the Company's objection to the defective pleading, was in itself a waiver; whether the Commissioners should have found that all the violations were of a continuing nature; whether the order of the Commissioners, which denied eleven women of any relief, constituted a violation of their due process rights and/or the equal protection clause; whether the relief granted by the Commissioners was too limited in scope; and whether the Commissioners abused their discretion in failing to declare the Union to be jointly liable for monetary damages.

Basically these issues focus on the Commissioners' decision regarding the defective original complaint and the scope of the remedy.

■ Firstly, it is clear that the original complaint, being substantially similar to the one of which we disapproved in *U.S. Steel, supra,* was defective; and appellants do not seriously contend otherwise. Secondly, it is equally clear

7. This Opinion appears at 77 Pa.Cmwlth. 291, 465 A.2d 740 (1983).

that the power of the Human Relations Commission results from the legislature's delegation of such power. As such the limits of that power must be strictly construed. *See Pa. Human Relations Commission v. St. Joe Minerals Corp.,* 476 Pa. 302, 382 A.2d 731 (1978). *See also, Pa. Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978).

■ By statute the jurisdiction of the Human Relations Commission may be invoked by filing a verified complaint "which shall set forth the particulars" of the discriminatory practice complained of. 43 P.S. § 959. *See U.S. Steel, supra.* A filing which does not comply with these strictures improperly invokes the Commission's jurisdiction, and is in fact a nullity.

■ Appellants have argued that the original pleading sufficiently put the Company and Union on notice, and like a praecipe for a writ of summons, should be sufficient to toll the statute of limitation. We find no merit in this argument. As stated above, proceedings before the Human Relations Commission are strictly governed by the statute devised by our legislature. They are wholly distinct from proceedings pursuant to the Rules of Civil Procedure, and decisions thereunder are not dispositive of proceedings before the Commission.

Since the 1970 complaint was defective, the Commission was without jurisdiction to rule on the merits of this case until the properly pleaded "Amended Complaint," and thus we find no merit in appellant's tolling argument. Similarly we dismiss their contention that the second pleading corrected the first, since the "Amended Complaint" could not properly be construed to convey ex post facto jurisdiction for a period beyond the statutory limit.

■ We also find meritless appellants' waiver issue. Since the Commission's jurisdiction exists solely by grant of statute, objections to complaints which fail to properly invoke that jurisdiction are in the nature of objections to subject matter jurisdiction, which may be raised at any

time. *See Pa. Human Relations Commission v. Alto Reste Cemetery Association,* 453 Pa. 124, 128 n. 4, 306 A.2d 881, 884 n. 4 (1973). Additionally, the objections which were filed by the respondents were not untimely according to the accepted standards of practice before the Human Relations Commission. *See* Commissioners' Supplementary Opinion and Order, Dkt. Nos. E–4027; E–4249 p. 8.

■ Complainants have also challenged the Commission's dismissal of the 1970 complaint on constitutional grounds, relying on the recent United States Supreme Court case of *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Logan* the complainant had filed an individual complaint with the Illinois Fair Employment Practices Commission. Thereafter, through an administrative oversight, the Commission failed to schedule a hearing on the complaint until five days after the statutory period for convening such a hearing had run. The Illinois Supreme Court had held that Logan's complaint must be dismissed due to the failure of the Commission to schedule the hearing properly. The United States Supreme Court reversed, holding that the dismissal of Logan's claim under these circumstances constituted a violation of his due process rights.[8]

We have no quarrel with the wisdom of the *Logan* decision. However, it is inapplicable to the present situation. Unlike Logan the complainants here, with the exception of Ms. McNasby, never filed complaints in 1970. In this regard the observation of the majority, per the opinion of Mr. Justice Blackmun, is instructive:

The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations (citation omitted) or, in an appropriate case, filing fees (citation omitted). And the State certainly accords *due* process when it terminates a claim for

8. Four members of the court concluded that Logan's equal protection rights were also violated.

failure to comply with a reasonable procedural or evidentiary rule. (Citations omitted.) (Emphasis in original.) *Id.* at 437, 102 S.Ct. at 1158.

Complainants have sought to circumvent the fact that they did not file individual complaints by arguing that their claim was preserved because the Commissioner's complaint represented their interests. This argument misperceives the nature of a complaint filed by the Commission on its own motion. Such a complaint, while often benefitting individual claimants, is filed *on behalf of the Commonwealth,* as opposed to individuals claimants, with the intent of vindicating *the public interest* by eliminating discriminatory practices. Thus, the complainants here were not the real parties in interest in the 1970 complaint and have no foundation for their constitutional arguments. *See generally Smiler v. Toll,* 373 Pa. 127, 137, 94 A.2d 764 (1953); *see also, Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950).

■ Appellant's final arguments go to the adequacy of the Commission's award. We have consistently held that the Commissioners, when fashioning an award, have broad discretion and their actions are entitled to deference by a reviewing court. *Pa. Human Relations Commission v. Zamatakis, supra.* In *Pa. Human Relations Commission v. Alto Reste Park, supra,* we adopted the following standard of review. "The (Commission's) order will not be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than can fairly be said to effectuate the policies of the Act' ..." (citation omitted). *Id.* 453 Pa. at 134, 306 A.2d at 887.

The decision of the Commissioners to limit the award of monetary damages to 90 days prior to the filing of the "Amended Complaint" represented an exercise of the discretion which they have been expressly delegated. That decision was obviously influenced by the fact that, other than Elizabeth McNasby, no individual claimant pressed her claim until prodded by the Commission. In these circum-

stances the Commissioner's limitation of benefits does not appear to be an abuse of discretion.

The basis for the Commissioner's refusal to conclude that an award should be entered for that period after 1975, was simply that there was insufficient evidence to uphold such a finding.  Our review of the record supports that conclusion.

■ Complainants also dispute the Commissioner's decision to absolve the Union of responsibility for monetary damages.  As stated above their action in this regard was based on the conclusion that it was the Company's actions which were primarily responsible for the employees' lost wages and opportunities.  Given the above cited standard of review we find no abuse in the Commission's award, especially since the Commissioners ordered affirmative injunctive relief to correct the existing problems.

We affirm the Order of the Commonwealth Court.

NIX, C.J., files a dissenting opinion.

NIX, Chief Justice, dissenting.

I dissent.  Once again the majority of this Court seeks to strangle the spirit of modern administrative law with the trappings of the more technical and formalistic style of pleadings associated with early common law.  As stated by Mr. Justice Roberts in his dissent to *Pennsylvania Human Relations Commission v. U.S. Steel Corp.*, 458 Pa. 559, 325 A.2d 910 (1974), "[t]his sterile and unrealistic approach results in a restrictive construction of the Pennsylvania Human Relations Act which may cripple the Commonwealth's efforts to correct the more subtle forms of discrimination." *Id.*, 458 Pa. at 567, 325 A.2d at 914 (Roberts, J., dissenting, joined by Nix, J.).

In the instant case the 1970 complaint filed by the Commission alleged:

On or about to wit, December 22, 1970 the complainant alleges that the respondent Company engages in unlaw-

ful employment practices which are discriminatory with respect to female employees, because of their sex, in hiring, assignment, seniority, transfer, salary, overtime, promotion, denial of training, and layoff. It is further alleged that the respondent Union concurs in and aids and abets the discriminatory practices of the respondent Company.

Unlike the general allegation of discrimination held insufficient by all members of this Court in *U.S. Steel Corp.*,[1] *supra*, 458 Pa. at 563, 570, 325 A.2d at 912, 916, the complaint filed in this case adequately put the defendant on notice that the Commission intended to conduct an investigation and hearing regarding sex discrimination against its female employees. The term "set forth the particulars" as used in Section 9 of the Act, Act of October 27, 1955, P.L. 744 § 9, *as amended*, 43 P.S. § 959, should not be read to mean that a statistical report is required in the original complaint.

The complaint in this case sufficiently alleged that the employer had engaged in across-the-board discrimination against female employees. When, as the record amply reflects,[2] an employer engages in such widespread sex

[1]. The comparable section of the complaint held insufficient in *Pa. Human Relations Commission v. U.S. Steel Corp.*, 458 Pa. 559, 325 A.2d 910 (1974), read:

The Respondent has in the past and continues until the present time to maintain a discriminatory system of recruitment, hiring, training, employment, compensation, promotion, demotion, job assignment or placement, transfer, layoff, retention, referral, dismissal, rehire, retirement, and pensions, and has otherwise discriminated in the past and continues until the present time to discriminate regarding terms, conditions and privileges of employment because of sex, race and national origin.
*Id.*, 458 Pa. at 562–63, 325 A.2d at 912.

[2]. Indeed the Pennsylvania Human Relations Commission found as a conclusion of law that:

At all times from July 9, 1969 to December 31, 1975, Crown engaged in a pattern and practice of discrimination based upon the sex, female, of applicants and employes in hiring, job assignment, job transfer, compensation, layoff, and recall from layoff, on a continuing basis.
Pennsylvania Human Relations Commission v. Crown Cork and Seal Co., P.H.R.C. Nos. E-4027, E-4249 (Aug. 28, 1981) at 29.

discrimination as was the case here, it is difficult to imagine how much more "particularized" the pleadings need be to provide the employer with notice of intent to investigate. Under the reasoning employed by the majority the complaint would resemble a detailed report. Such specificity is absurd in light of the fact that oftentimes in these cases the necessary "particularized" information will not be disclosed until the investigation is completed.

I would rule, therefore, that initial complaints in discrimination cases brought by the Pennsylvania Human Relations Board need only give notice to: (1) enable a respondent to lighten the burden of the investigation and hearing process itself, and (2) encourage voluntary compliance with the Act. *See U.S. Steel Corp., supra,* 458 Pa. at 569, 325 A.2d at 915 (Roberts, J., dissenting, joined by Nix, J.).

I further disagree with the majority's conclusion that the Pennsylvania Human Relations Commission does not represent the individual claimants' interests when it files a complaint alleging discrimination.[3] If such is the case, then a complaint by the Commission is nothing more than a mere formality which can impose no monetary penalty upon the discriminating employer. Such a conclusion also is contrary to the holding of the United States Supreme Court in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *Logan* held that an individual's right to

---

**3.** The majority supported this proposition by citing *Smiler v. Toll,* 373 Pa. 127, 137, 94 A.2d 764 (1953) and *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950). Neither of these cases, however, involved the situation where a public agency was charged with the duty to safeguard against constitutional violations. *Smiler* involved the issue of a real party in interest under a sealed contract and *Hanover Fire Insurance Co.* merely held that a third party beneficiary under a fire insurance policy must be named or referred to in the contract. We are not dealing with theories of contract in the instant case. Here we have the situation where a public agency has been established to safeguard the public against unlawful discriminatory practices. Since this Commission benefits the entire Commonwealth, it does not follow that individual complainants are not represented by the Commission. Rigid principles of contract law should not obstruct the legislative intent behind the establishment of the Pennsylvania Human Relations Commission.

redress grievances through the adjudicatory procedures of a state agency charged with providing relief to citizens who have been unjustly injured by discrimination in employment is a species of property protected by the Due Process Clause. *Id.* at 431, 102 S.Ct. at 1155.

The Pennsylvania Human Relations Commission has the power and the duty "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices." 43 P.S. § 957(f). The eleven female employees who went to the Commission in February of 1970 thus had reason to believe that their rights were being vindicated by the Commission. Certainly claimants such as those before this Court have an interest in freedom from discrimination in employment, in back pay or other monetary relief, and in public vindication of their rights. They also have an interest in redressing their grievances through the administrative agency that was established for that purpose by the legislature as an expert in the field of discrimination, and in the full benefits of an investigation and hearing as provided by the Act. *Logan v. Zimmerman Brush Co., supra* at 431, 102 S.Ct. at 1155.

For the above reasons I would hold that the original complaint filed by the Commission sufficiently satisfied the "particularity" requirement of Section 9 and that the rights of the individual complainants were preserved by the Commission. I would thus remand the action to the Commission for the award of back pay or other monetary relief for the individual complainants not inconsistent with the finding that the original complaint was valid.