**Elizabeth McNASBY, et al.**

v.

**CROWN CORK & SEAL, INC., et al.**

**Civ. A. No. 82–4258.**

United States District Court,
E.D. Pennsylvania.

Nov. 1, 1988.

---

Cohen, Shapiro, Polisher, Shiekman and Cohen, Alan M. Lernar, Jeffrey Ivan Pasek, Philadelphia, Pa., Paul J. Russoniello, for plaintiffs.

Mark P. Muller, Philadelphia, Pa., for Sheet Metal Production Worker's Union Local 266.

Dechert Price & Rhoads, Jerome A. Hoffman, Lisa M. Scottoline, and Arthur S. Gabinet, Stephen P. Gallagher, Stack & Gallagher, 1600 Locust St., Philadelphia, Pa., for Crown Cork & Seal Co. Inc.

## MEMORANDUM

GILES, District Judge.

In September of 1982, Elizabeth McNasby (McNasby) filed the present action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as a class action on behalf of female workers at Crown Cork & Seal, Inc. (Crown). The complaint alleged that Crown and the Sheet Metal Production Workers Union, Local 266, had engaged in a pattern and practice of sex discrimination, particularly during the period between October 17, 1970 and December 31, 1975. McNasby filed her complaint with the EEOC on May 17, 1971. None of the other plaintiffs filed such a complaint.

The events from which McNasby's claims arise were also the subject of hearings before the Pennsylvania Human Relations Commission (PHRC). McNasby had filed a written complaint with the PHRC in June of 1971. The PHRC then filed an amended complaint which detailed the allegations of discrimination by the defendants and included affidavits from most of the plaintiffs in the present action. The Commission held thirty-seven days of public hearings on the allegations of the complaint. On September 29, 1981, the PHRC issued its findings of fact and its final order. The Commission concluded that McNasby and the other plaintiffs were victims of discrimination, but granted very limited monetary relief to the victims.

McNasby and the other plaintiffs appealed the PHRC's decision to the Pennsylvania state appellate courts and to the United States Supreme Court. The Pennsylvania Commonwealth Court and the Pennsylvania Supreme Court affirmed the PHRC's

decision. *See Murphy v. Commonwealth of Pennsylvania Human Relations Commission*, 77 Pa.Commw. 291, 465 A.2d 740 (1983); *Murphy v. Commonwealth of Pennsylvania Human Relations Commission*, 506 Pa. 549, 486 A.2d 388 (1985). McNasby's appeal to the United States Supreme Court was dismissed for want of a substantial federal question. *See Murphy v. Commonwealth of Pennsylvania Human Relations Commission*, 471 U.S. 1132, 105 S.Ct. 2669, 86 L.Ed.2d 689 (1985).

McNasby had amended her EEOC complaint while the state court appeals were pending and brought the current action in federal court in September of 1982. The case was placed on the civil suspense docket pending the outcome of the state appeals and was returned to the active case list in December of 1985. Defendants filed a motion for summary judgment in January of 1986, but this motion was denied on the grounds that the PHRC was not entitled to *res judicata* effect because the PHRC did not fashion the "make-whole" remedy to which plaintiffs were entitled under Title VII, 656 F.Supp. 206.

Defendant Crown now moves for summary judgment based upon the recent decision of the United States Court of Appeals for the Third Circuit in *Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988). Crown claims that the class action stands or falls on McNasby's claims because she is the only plaintiff who filed a charge with the EEOC, a prerequisite to filing a Title VII action. Plaintiff does not dispute this.

A federal court is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, in applying preclusion principles and must therefore give a prior state judgment the same preclusive effect as would be given to that judgment under the law of the state in which the judgment was rendered. *Gregory v. Chehi*, 843 F.2d at 116. If state law does not preclude relitigation, then the federal action may go forward. If state law does preclude relitigation, then the court must consider whether any circumstances exist which would prevent the application of § 1738.

## I. The Pennsylvania Law of Claim Preclusion

### a. Statutory Preclusion

Defendant contends that, under both Pennsylvania statutory and common law, McNasby's claims would be precluded in the Pennsylvania state courts. It argues that, under § 1738, plaintiff's action must also be barred in federal court.

Defendant maintains that the Pennsylvania Human Relations Act (PHRA), under which McNasby brought her claim at the state level, contains a section which provides the Pennsylvania rule of claim preclusion. The statute provides:

> [A]s to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned.

Pa.Stat.Ann. tit. 43, § 962(b) (Purdon Supp. 1988).

In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 463, 102 S.Ct. 1883, 1888, 72 L.Ed.2d 262 (1982), the Supreme Court addressed the issue of whether a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim as meritless. Defendant argues that the Court in *Kremer* based its decision on a New York statute that is "virtually identical" to the PHRA statute in this case.

In *Kremer*, the New York administrative agency's decision was affirmed by both the agency's appeals board and the Appellate Division of the New York Supreme Court. The Court stated:

> There is no question that this judicial determination precludes Kremer from bringing "any other action, civil or criminal, based upon the same grievance" in the New York courts. N.Y.Exec.Law § 300 (McKinney) 1972. By its terms, therefore, § 1738 would appear to pre-

clude Kremer from relitigating the same question in federal court.

*Kremer*, 456 U.S. at 467, 102 S.Ct. at 1890.

Plaintiff has not directly addressed the issue of the statute. Plaintiff's arguments are made under the Pennsylvania common law.

b. The Pennsylvania Courts' Jurisdiction

■ Plaintiff first argues that Pennsylvania courts would not apply claim preclusion to McNasby's Title VII claim because Title VII claims are within the exclusive jurisdiction of the federal courts. Under Pennsylvania law, a second tribunal will be bound by the findings of a first tribunal if the first court to adjudicate the matter had jurisdiction to hear the omitted claim. *See City of Philadelphia v. Stradford Arms, Inc.*, 1 Pa.Commw. 190, 274 A.2d 277, 280 (1971); *Gregory*, 843 F.2d at 117.

Plaintiff also cites the Supreme Court case of *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) which stated:

With respect to matters that were not decided in the state proceedings, we note that claim preclusion generally does not apply where the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the court.

Plaintiff claims that, under *Bradshaw v. General Motors Corp.*, 805 F.2d 110 (3d Cir.1986), federal courts have exclusive jurisdiction over Title VII claims. Because the Pennsylvania court was not free to consider the Title VII claim, plaintiff argues, it would not be precluded under Pennsylvania law.

Defendant correctly asserts that, although the third circuit held that federal courts have exclusive jurisdiction over Title VII claims in *Bradshaw*, Pennsylvania courts were free to entertain Title VII claims at all relevant times during the course of the state proceedings in this case (1970–1985). In *Chmill v. City of Pittsburgh*, 488 Pa. 470, 412 A.2d 860 (1980), the Pennsylvania Supreme Court considered and rejected a Title VII challenge to ac-

tions of the Pittsburgh Civil Service Commission. Defendant also points out that, in the present case, the PHRC considered Title VII with respect to statistical evidence and the remedial authority of the PHRC. Appendix to Motion of Defendant at 146, 156.

Plaintiff has not shown that Title VII was within the exclusive jurisdiction of the federal courts at the times relevant to this case. Because the Pennsylvania courts considered themselves free to hear Title VII claims, McNasby's action would be precluded under Pennsylvania law.

c. Identity of Cause of Action

■ Plaintiff next contends that Title VII and the state law discrimination claims are not the same causes of action and, as such, would not be awarded preclusive effect by the Pennsylvania courts. Under Pennsylvania common law, a prior action has preclusive effect if there is:

(1) identity of subject matter;

(2) identity of causes of action;

(3) identity of persons and parties to the action;

(4) identity of the quality and capacity of the parties suing or being sued.

*Gregory*, 843 F.2d at 116 (citing *Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 105, 415 A.2d 53 (1980)). Plaintiff contends that it is sufficient that the PHRC claim and the Title VII claim are technically different causes of action and that Pennsylvania courts would not apply claim preclusion in such a situation.

In *Gregory*, the third circuit held that a cause of action or "claim" must be defined broadly in transactional terms, "regardless of the number of substantive theories advanced in the multiple suits by the plaintiff." 843 F.2d at 117 (citing Restatement (Second) of Judgments § 24). "A single cause of action may comprise claims under a number of different statutory and common law grounds." *Id.* (citation omitted). *Gregory* cited the Pennsylvania Supreme Court case of *Helmig v. Rockwell Mfg. Co.*, 389 Pa. 21, 131 A.2d 622 (1957), which barred a second action on the grounds that "the acts complained of in both actions

[were] identical" and its prediction that the plaintiff would "inevitably call the same witnesses and present exactly the same evidence in this second action." 843 F.2d at 117 (citing *Helmig,* 389 Pa. at 30, 131 A.2d 622). The third circuit in *Gregory* concluded that:

> Multiple claims do not arise solely because a number of different legal theories deriving from a specific incident are used to assert liability. The transaction remains unitary 'although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'

843 F.2d at 117 (citing *Helmig,* 389 Pa. at 30, 131 A.2d 622). In addition, *Gregory* expressly held that it was not significant that one action was based on federal law while the other was based on state law. 843 F.2d at 118.

In the present case, there is no question that plaintiff's present action is based on the same set of facts litigated at the state level. The fact that McNasby's claim now rests on different statutory grounds is not sufficient, under Pennsylvania law, to be considered a different cause of action. This court is persuaded that the plaintiff had but one cause of action for employment discrimination, "even if different forms of relief were available and varying theories of constitutional and statutory violations potentially were applicable." 843 F.2d at 119.

#### d. Identity of Quality and Capacity of Plaintiff

▮ Plaintiff next contends that Pennsylvania courts would not preclude McNasby's claim for supplemental relief under Title VII because she "was not a party in the same capacity in the administrative proceedings as she is in this lawsuit and did not have a full and fair opportunity to litigate in the prior proceedings her right to make whole relief." McNasby Brief at 16.

There is no requirement that plaintiff have a full and fair opportunity to litigate her claim under the Pennsylvania common law of claim preclusion. The requirements for claim preclusion are, as listed above, identity of the thing sued on, the cause of action, the parties, and the quality and capacity of the parties suing or being sued. *Gregory,* 843 F.2d at 116.

Plaintiff has attempted to fit her argument into the framework of claim preclusion law by arguing that there was no identity of the quality and capacity of the person suing. Plaintiff argues that the quality of McNasby's participation in the proceedings before the PHRC differed significantly from the quality of her participation in the present case. Plaintiff maintains that McNasby was an actual complainant at the state administrative level, but was denied any control over the presentation of her claims. She claims that the PHRC, in representing her, failed to develop a record to support her post–1975 claims for relief. McNasby also points out that the Pennsylvania Supreme Court rejected McNasby's due process claims because it found that the complainants were not the "real parties in interest" and had no foundation for their constitutional claims. *See Murphy v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 506 Pa. 549, 486 A.2d 388 (1985).

Plaintiff contends that it is a generally recognized principle that a person who is not a party to litigation may be bound only to the extent that she openly and actively assumes control of and manages the litigation. Plaintiff cites *Charter Oak Fire Insurance Co. v. Sumitomo Marine and Fire Insurance Co.,* 750 F.2d 267, 270 (3d Cir.1984), which held that, although the insurance companies in the federal action were not technically parties to the state action, they were "litigating nonparties" and bound by the state court judgment.

The decision in *Charter Oak* works against the plaintiff's position. There, the court actually expanded the reach of claim preclusion to one "who *assists* in the prosecution or defense of an action in aid of some interest of his own." 750 F.2d at 270 (citation omitted) (emphasis added). Plaintiff falls into this category and is thus bound by the state court judgments.

■ Plaintiff has not shown the existence of any exceptions to the PHRC preclusion statute, nor has she adequately argued that her claim is not precluded by Pennsylvania common law. Therefore, I conclude that Pennsylvania law would preclude relitigation of the plaintiffs' claims in Pennsylvania state court. I now turn to an examination of plaintiff's argument that this court need not apply Pennsylvania law under the Full Faith and Credit statute, 28 U.S.C. § 1738, in the present case.

## II. *The Application of § 1738*

Plaintiff argues that, even if Pennsylvania law would bar her from seeking additional relief, federal law permits her to do so. Plaintiff makes this argument on several grounds.

### a. Due Process

■ McNasby first argues that the full faith and credit clause does not bar her claim for relief because she did not have a full and fair opportunity to litigate her damage claim in the state proceedings. Plaintiff contends that the Supreme Court has expressly recognized that, where the party against whom an earlier decision is raised as a bar did not have a full and fair opportunity to litigate a claim or issue, the earlier litigation will not bar relitigation on the claim or issue. *See Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1892–98 (citing *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

Defendant argues that McNasby is precluded from raising a due process challenge to the adequacy of the state proceedings because she raised due process challenges in her state court appeals and in her petition for certiorari to the United States Supreme Court, and lost.

It is undisputed that McNasby raised the following questions in her appeal to the Pennsylvania Supreme Court:

5. Did the Court below err in ruling that the final order of the Human Relations Commission does not deprive Appellants and those similarly situated of Due Process of Law? Answered in the negative below.

6. Did the court below err in ruling that the final order of the Human Relations Commission does not deprive Appellants and those similarly situated of equal protection of the law? Answered in the negative below.

Defendant's Appendix at 537.

It is also undisputed that these issues were decided against McNasby. However, the Pennsylvania Supreme Court rejected the due process claims on the basis that the complainants were not the "real parties in interest" and had no foundation for their constitutional claims. *See Murphy*, 506 Pa. at 559, 486 A.2d 388.

I find that consideration of plaintiff's due process arguments is not precluded because of the state court appeals on this issue. The Pennsylvania Supreme Court did not consider the merit of plaintiff's claim. Plaintiff now has standing to challenge the due process of the PHRC proceedings because defendant is urging the application of § 1738 and the preclusion of plaintiff's claims.

■ Plaintiff contrasts the process the plaintiff in *Kremer* was afforded with the process she received and argues that *Kremer* gives some guidance as to what this "full and fair opportunity" entails. However, plaintiff ignores the holding of *Kremer* that state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." 456 U.S. at 481, 102 S.Ct. at 1897–98.

The Court in *Kremer* stated:

We must bear in mind that no single model of procedural fairness, let alone a particular form of procedure is dictated by the Due Process Clause.... The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.

456 U.S. at 483, 102 S.Ct. at 1898 (citations omitted).

Here, the PHRC provides for (1) the right of an individual to file a complaint

with the Commission, (2) investigation by the Commission, (3) conciliation efforts by the Commission, (4) a public hearing, (5) the right of the complainant to appear, with or without counsel and submit testimony. Pa. Stat.Ann. tit. 43, § 959. The complainant is also entitled to judicial review of the PHRC decision. Pa.Stat.Ann. tit. 43, § 960.

In *Davis v. United States Steel Supply,* 688 F.2d 166, 172 (3d Cir.1982), the third circuit held that the plaintiff's complaint to the Pittsburgh Commission on Human Relations, and her subsequent appeal to state court, barred her from bringing another action based on the same facts in federal court. In *Davis,* the Commission held a hearing in which nine witnesses, including plaintiff, testified and were subjected to cross-examination. Plaintiff challenged the due process she received in the administrative proceeding. The third circuit found that the procedures provided for under the Pittsburgh Act were "far more extensive than those upheld as adequate in *Kremer.*" 688 F.2d at 172 n. 6.

In this case, it is uncontested that a full hearing was held and forty-eight witnesses including McNasby, testified. Following the Commission's decision of August 28, 1981, both plaintiff and the Commission's general counsel petitioned the Commission to reconsider. McNasby's counsel raised constitutional arguments at that time. In addition, McNasby was willing to rely on the findings of fact on the merits of the administrative hearing in her action for supplemental relief in federal court. The plaintiff's willingness to rely on the record below in *Davis* was considered to be significant by the third circuit in determining whether the hearing had been procedurally adequate. Therefore, I find that the PHRC hearing was sufficient to meet the flexible requirements of the Due Process Clause.

#### b. Relief

■ Plaintiff next argues that Title VII authorizes persons who have been found to be victims of discrimination, but who have been denied "make-whole" relief in the state proceedings to obtain supplemental relief in a federal Title VII action. Al-

though this court previously agreed with this argument, I must now change my judgment in light of the third circuit's recent decision in *Gregory.*

In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Supreme Court held that the "ultimate authority" to secure compliance with Title VII resides in the federal courts. 447 U.S. at 64, 100 S.Ct. at 2031 (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974)). The Court held that recourse to federal courts under Title VII is allowed when state courts do not provide adequate relief. It stated:

> It is clear from this scheme of interrelated and complementary state and federal enforcement that Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief.

447 U.S. at 65, 100 S.Ct. at 2031–32.

The *Kremer* Court found that the plaintiff's federal cause of action was barred by the state administrative hearing and its subsequent appellate review. I do not believe that *Kremer* overruled *Gaslight.* *Kremer* dealt with the preclusive effect of a judgment on the merits. *Gaslight* dealt with the preclusive effect of a decision on the issue of relief. In addition, *Kremer* involved a state court's affirmance of a state administrative agency's decision, while *Gaslight* involved only a state administrative agency's decision. The Court in *Kremer* stated:

> No provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action, nor does the Act specify the weight a federal court should afford a final judgment by a state court if such a remedy is sought. While we have interpreted the "civil action" authorized to follow consideration by federal and state administrative *agencies* to be a "trial *de novo.*"

... (citations omitted) neither the statute nor our decisions indicate that the final judgment of a state *court* is subject to redetermination at such a trial.

456 U.S. at 469–70, 102 S.Ct. at 1891. (emphasis in the original).

*See also University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

Despite the fact that *Kremer* did not overrule *Gaslight,* plaintiff's action is barred by the recent third circuit case of *Gregory v. Chehi,* which appears to extend the holding of *Kremer.* In *Gregory,* the third circuit examined issue and claim preclusion in the context of a lawsuit brought under 42 U.S.C. § 1983. The plaintiff in *Gregory* demanded and received a hearing before the Lower Saucon, Pennsylvania Township Council upon his dismissal from his position as a police officer. Following a hearing, the council sustained the plaintiff's discharge. Plaintiff appealed to the Court of Common Pleas of Northampton County. The court upheld the Council's factual findings and the procedures it followed in sustaining the dismissal. Plaintiff did not appeal this decision to the state appellate court. However, he filed suit in federal court three months later seeking reinstatement and damages for alleged violations of his constitutional rights.

The district court held that the plaintiff's due process claim based on his allegation that he was denied his first amendment rights was barred by collateral estoppel. The court reasoned that, although the state court did not mention the first amendment, the issue had been fully and fairly adjudicated in the context of an allegation of bias. 843 F.2d at 115.

The appellate court in *Gregory* extended the holding of *Kremer* to cover the issue of supplemental relief in a subsequent action where a state *court,* unlike the situation in *Gaslight,* has already ruled. The court stated:

Distinct causes of action do not arise merely because the motivations alleged in the two forums differ. Nor, as we have observed, is it critical that one is based on federal law and the other on state law.... It is not significant that the *relief* obtained in the two forums varies to some degree.

843 F.2d at 118. (emphasis added).

In addition, the court expressly disapproved the holding in *Kelly v. Warminster Township Bd. of Supervisors,* 512 F.Supp. 658 (E.D.Pa.1981), *aff'd mem.,* 681 F.2d 806 (3d Cir.1981), *cert. denied,* 459 U.S. 834, 103 S.Ct. 76, 74 L.Ed.2d 74 (1982), to the extent that the court based its decision to allow the federal action to go forward on differences in the relief obtainable in federal and state court. 843 F.2d at 119.

### c. Differences in Legal Standards

■ Plaintiff next contends that § 1738 does not apply where the prior state judgment is based on a materially different legal standard from that required by Title VII. Plaintiff relies on *Alexander v. Gardner–Denver,* 415 U.S. 36, •94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), arguing that the Supreme Court refused to give a preclusive effect to an arbitrator's decision on the grounds that the arbitrator applied a different legal standard than that required by Title VII. Plaintiff's argument ignores the Supreme Court's later interpretation of *Gardner–Denver* in *Kremer.* The Court held:

Arbitration decisions, of course, are not subject to the mandate of Section 1738. Furthermore, unlike arbitration hearings under collective-bargaining agreements, state fair employment practice laws are explicitly made part of the Title VII enforcement scheme.... *Gardner–Denver* also rested on the inappropriateness of arbitration as a forum for the resolution of Title VII claims. The arbitrator's task, we recognized, is to "effectuate the intent of the parties rather than the requirements of enacted legislation." ... *These characteristics cannot be attributed to state administrative boards and state courts.*

456 U.S. at 477–78, 102 S.Ct. at 1895–96 (emphasis added).

Plaintiff also cites a New York district court case for the proposition that the

plaintiff was entitled to bring a Title VII action in federal court despite a state administrative board rejection of her claim on the basis that "sex was a bona fide occupational qualification (BFOQ) for the position of correction officer ..." *Reynolds v. New York State Department of Correction Services,* 568 F.Supp. 747 (S.D.N.Y.1983). The district court observed that the state law conflicted with the Title VII standard that sex is not a BFOQ for that position. Plaintiff argues that the legal standards for fashioning a remedy under the PHRA and Title VII conflict and that the PHRC standard was less favorable to the plaintiff than required by Title VII.

Plaintiff acknowledges that *Gregory* held that the mere fact of a difference in available remedies does not, without more, prevent the application of claim preclusion. She argues, however, that the present case involves not a mere difference in available remedies, but the "difference in the legal standards by which the Congress has directed the remedy be determined...." McNasby Brief at 35, n. 10.

The relief obtainable in any forum is based upon the legal standards of that forum. Plaintiff's attempt to differenciate between "relief obtainable" and the legal standards by which the remedy is to be determined is without merit. The difference between the two is a semantic one, at best.

### d. Implied Repeal of § 1738

Finally, plaintiff argues that § 1738 was impliedly repealed by Title VII, to the limited extent necessary to permit the federal courts to carry out their mandate under Title VII.

In *Kremer,* the Supreme Court exhaustively discussed whether § 1738 was impliedly repealed by Title VII. The Court held:

Nothing in the legislative history of the 1964 Act suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court. While striving to craft an optimal niche for the States in the overall enforcement scheme, the legislators did not envision full litigation of a single claim in both state and federal forums.

456 U.S. at 474, 102 S.Ct. at 1893.

The Court concluded that neither the statutory language nor the congressional debates were sufficient to repeal "§ 1738's longstanding directive to federal courts." 456 U.S. at 476, 102 S.Ct. at 1895.

Plaintiff claims that her present position is not inconsistent with *Kremer* because the Court did not foreclose application of the doctrine of implied repeal as to particular issues, such as the issue of relief.

Plaintiff cites Congress' "clear statement that it is the duty of federal courts to provide make-whole relief for victims of discrimination" in support of her argument. While it is true that Congress so intended, this goal must be considered together with the fact that "no provision of Title VII requires claimants to pursue in state court an unfavorable state administrative action...." 456 U.S. at 469, 102 S.Ct. at 1891. Plaintiff was free to pursue a federal court action after the PHRC proceedings. By appealing the PHRC's adverse findings at the state level, McNasby "locked [herself] out of the federal courts. Under Section 1738 and traditional [claim preclusion] theory, we lack the power to let [her] in." *Wakeen v. Hoffman House, Inc.,* 724 F.2d 1238 (7th Cir.1983).

An appropriate order follows.

### JUDGMENT ORDER

AND NOW, this 1st day of November, 1988, it is hereby ORDERED that:

1. Defendant Crown Cork & Seal, Inc.'s motion for summary judgment is GRANTED;

2. Plaintiffs' claims are DISMISSED with prejudice; and

3. JUDGMENT is entered in favor of the defendants.