**DREXELBROOK ASSOCIATES, and L. William Kay, II, Petitioners**

v.

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2012.

Decided June 27, 2012.

---

Mark S. Halpern, Drexel Hill, for petitioners.

Martin C. Cunningham, Assistant Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Drexelbrook Associates and L. William Kay, II (Kay) appeal the July 25, 2011 Final Order of the Pennsylvania Human Relations Commission (PHRC) requiring Drexelbrook Associates and Kay to cease and desist from retaliation against anyone having filed a discrimination claim and ordering various monetary damages in favor of Ingrid Dotson Luderman (Dotson). There are essentially two issues before the Court: (1) whether Dotson timely filed her action against Drexelbrook Associates, and (2) whether Dotson timely filed her action

against Kay. We affirm in part, and reverse in part.

Drexelbrook Associates is a Limited Partnership with approximately 80 partners. Drexelbrook Associates owns an apartment complex. Kay is Drexelbrook Associates' general partner. Drexelbrook Associates also owns LWK Corporation d/b/a Drexelbrook (Drexelbrook), a banquet and catering business. Kay is the president of Drexelbrook. Drexelbrook rents space from Drexelbrook Associates for its banquet and catering business. Kay is the operating supervisor over the apartment complex and Drexelbrook. Drexelbrook Associates' offices are located at 4812 Drexelbrook Drive, a few hundred yards from Drexelbrook's catering facility.

In July 1995, Dotson became a tenant of Drexelbrook Associates' apartments. In November 2001, Dotson was hired to be a part-time bartender at Drexelbrook's banquet facility. Dotson left her employment with Drexelbrook in September 2002 and subsequently filed an Equal Employment Opportunity Commission (EEOC) sexual harassment claim against Drexelbrook. On January 9, 2006, the sexual harassment claim was settled during a settlement conference at which Dotson and Kay were both in attendance.[1] Approximately three months later, on April 19, 2006, Kay advised Dotson by letter that her lease was terminated effective June 24, 2006. By letter dated August 3, 2006, Dotson's attorney advised Drexelbrook that Kay's action of terminating the lease was considered a retaliatory action.

On October 16, 2006, Dotson filed a complaint with the PHRC alleging unlawful retaliation naming LWK Corporation d/b/a Drexelbrook, 4812 Drexelbrook Drive, Drexel Hill, PA 19026, and d/b/a Drexelbrook Caterers, and Drexelbrook Catering, Drexelbrook Drive and Valley Road, Drexel Hill, PA 19026, as Respondents. On December 27, 2006, Dotson filed an amended complaint changing the name of Respondents to Drexelbrook Associates, Drexelbrook Apartments, & L. William Kay, II et. al. The amended complaint added a claim against Kay for aiding and abetting.

■ A hearing was held before a Permanent Hearing Examiner on April 11, 2011. During the hearing, Drexelbrook Associates and Kay renewed a motion they had filed previously, which was denied by the Motions Commissioner, concerning the naming of Drexelbrook Associates and Kay as Respondents outside the 180 day statute of limitations. On July 8, 2011, the Permanent Hearing Examiner recommended a finding that Drexelbrook Associates and Kay did unlawfully discriminate against Dotson by terminating her lease in retaliation for the sexual harassment claim. On July 25, 2011, the PHRC entered a Final Order adopting the Permanent Hearing Examiner's Recommendation. Drexelbrook Associates and Kay appealed to this Court.[2]

■ Drexelbrook Associates and Kay argue that Dotson did not timely file her action against Drexelbrook Associates pursuant to Section 9(h) of the Pennsylvania Human Relations Act (PHRA).[3] Drexelbrook Associates and Kay specifically con-

---

1. The Release was finalized on April 6, 2006.

2. "Our scope of review from a determination of the Commission is whether it is in accordance with the law, whether constitutional rights have been violated and whether the findings are supported by substantial evidence." *Garner v. Pennsylvania Human Relations Comm'n*, 16 A.3d 1189, 1198 n. 3 (Pa. Cmwlth.2011).

3. Act of October 27, 1955, *as amended*, 43 P.S. § 959(h).

tend that Dotson did not file her original complaint until the 180th day, and waited approximately 70 days thereafter before terminating her action against her employer and proceeding against her landlord, and its general partner, Kay.

Section 9(h) of the PHRA provides that "[a]ny complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination...." This Court in *Vintage Homes, Inc. v. Pennsylvania Human Relations Commission,* 135 Pa.Cmwlth. 590, 581 A.2d 1014 (1990), held that "the act of permitting [a party] to amend her complaint with the [PHRC] for the purpose of correcting the corporate name of the respondent did not have the effect of enlarging the time limitations set forth in the [PHRA]...." *Id.,* 581 A.2d at 1017.

This Court cited the Pennsylvania Supreme Court in *Vintage Homes,* stating: "If the *right party* was in court as a result of the service of process and it was merely his or its designation which was sought to be changed, we would be prone to permit the amendment." *Id.,* 581 A.2d at 1017 (quoting *Saracina v. Cotoia,* 417 Pa. 80, 84, 208 A.2d 764, 766 (1965)). The Court in *Vintage Homes* specifically concluded that "the right party was brought within the [PHRC's] jurisdiction by the original complaint, but under the wrong corporate designation" based upon the close relationship of the corporate entities. *Id.,* 581 A.2d at 1017. Factors relied on by the Court included the fact that the initial complaint was served at the correct mailing address, and that the allegations made in both complaints were identical.

Here, although Dotson technically named her former employer in the original complaint, and her former landlord in the amended complaint, the cause of action was the same, i.e., retaliatory eviction from her residence, in both the complaint and

the amended complaint. In addition, although Drexelbrook Associates, and Drexelbrook have two different addresses, Dotson used the address of the correct party in her original complaint, and the original complaint was served at the correct address. Moreover, the original complaint named LWK d/b/a Drexelbrook as a Respondent, and the amended complaint named Drexelbrook Associates as a Respondent. Finally, in both the complaint and the amended complaint Dotson referred to her employer and her landlord interchangeably as Respondent, indicating further that she believed they were both the same entity. *See* Certified Record (C.R.) at 4a, 4b. Accordingly, the facts herein show that the right party was brought before the PHRC but under the wrong corporate designation.

■ "The purpose of the pleadings is to place a defendant on notice of the claims that he will have to defend." *Com. v. Percudani,* 844 A.2d 35, 48 (Pa.Cmwlth. 2004). Clearly, Drexelbrook Associates was on notice. Drexelbrook Associates owns Drexelbrook, and Kay is both Drexelbrook Associates' general partner, and Drexelbrook's president. The same attorney represents Drexelbrook Associates, Drexelbrook, and Kay. Kay participated in the settlement of the sexual harassment suit, Kay signed the letter terminating Dotson's lease, and Dotson's attorney advised Drexelbrook that Kay's action of terminating the lease was considered an unlawful retaliatory action.

This Court notes that Drexelbrook Associates and Kay contend that *Murphy v. Commonwealth,* 506 Pa. 549, 486 A.2d 388 (1985) is controlling, as opposed to *Vintage Homes.* Specifically, Drexelbrook Associates and Kay cite *Murphy* for the proposition that notice is irrelevant to the determination of timeliness. However, the facts in *Murphy* are clearly distinguishable. In

that case the original complaint was dismissed as a nullity for failure to state the particulars of the discriminatory practice. The Court specifically held:

> Since the [original] complaint was defective, the [PHRC] was without jurisdiction to rule on the merits of this case until the properly pleaded 'Amended Complaint,' and thus we find no merit in appellant's tolling argument. Similarly we dismiss their contention that the second pleading corrected the first, since the 'Amended Complaint' could not properly be construed to convey ex post facto jurisdiction for a period beyond the statutory limit.

*Murphy*, 506 Pa. at 557, 486 A.2d at 392. In the instant case, the original complaint was not defective, thus giving the PHRC jurisdiction to hear the matter. The language in the complaint and the amended complaint both state a cause of action for retaliatory eviction. Although the complaint misstates the sections of the PHRA that apply, Count I is specifically labeled "Retaliation." Count I includes a paragraph stating:

> 9. [Dotson] was forced to leave her home for more than eleven years, in retaliation for her complaints of harassment, hostile work environment and constructive discharge.

C.R. at 4a. Count II of the complaint is labeled "Housing Discrimination (Retaliation)," and includes a paragraph alleging:

> 15. Respondent retaliated against [Dotson] as a result of her complaints of harassment, hostile work environment and constructive discharge, by evicting [Dotson] from her apartment by letter. . . .

C.R. at 4a. Count I of the amended complaint is labeled "Evict Retaliation–Dis-

crimination," and contains paragraphs claiming:

> 7. On April 19, 2006, the Respondent notified me that my lease was being terminated effective June 24, 2006. The Respondent did not give a reason for terminating my lease.

> 8. I allege that Respondent's actions were retaliatory because I was a resident at this Respondent (sic) property for about eleven (11) years. I also worked for the Respondent for about one year.

C.R. at 4b. Clearly, both the complaint and the amended complaint state a cause of action for retaliatory eviction. Accordingly, *Murphy* is not applicable.

This Court in *Vintage Homes*, quoted the Pennsylvania Supreme Court in *Wright v. Eureka Tempered Copper Company*, 206 Pa. 274, 55 A. 978 (1903), wherein, it was held:

> A party whose name it is asked to amend must be in court. If the effect of the amendment will be to correct the name under which the right party was sued, it should be allowed; if its effect will be to bring a new party on the record, it should be refused after the running of the statute of limitations.

*Vintage Homes*, 581 A.2d at 1016. In this case, the original complaint named LWK Corporation d/b/a Drexelbrook, and the amended complaint named Drexelbrook Associates. Both the complaint and the amended complaint were served on Drexelbrook Associates and both contained an allegation of retaliatory eviction against "Respondent." The chart below illustrates with detailed comparison why we must adhere to *Vintage Homes* and the *stare decisis* upon which it relied.

| Vintage Homes, Inc. | Drexelbrook |
| --- | --- |
| Vintage Homes, Inc. and Vintage Realty, Inc. | LWK Corporation d/b/a Drexelbrook and Drexelbrook Associates |
| Separate entities, Same address | Separate entities, Correct address in both the complaint and the amended complaint |
| Sole stockholder of Vintage Homes is Gene Percudani Sole stockholder of Vintage Realty is Kathie Percudani | President of Drexelbrook is L. William Kay, II General partner of Drexelbrook Associates is L.William Kay, II |
| Vintage Homes employs Complainant, and Gene and Kathie Percudani | Drexelbrook employed Complainant, Drexelbrook Associates was Complainant's Landlord |
| Raintree Enterprises, Inc. owns both Vintage Homes, and Vintage Realty | Drexelbrook Associates owns Drexelbrook |
| Same counsel represents Vintage Homes, Vintage Realty, and Raintree Enterprises | Same counsel represents Drexelbrook and Drexelbrook Associates |
| Same allegations in both the complaint and the amended complaint | Same allegations in both the complaint and the amended complaint |

As in *Wright* and *Vintage Homes* the original complaint brought the right party, Drexelbrook Associates, before the PHRC as a result of the service of process, and the amended complaint merely sought to change the closely-related corporate designation of Drexelbrook to Drexelbrook Associates. Accordingly, Dotson timely filed her action against Drexelbrook Associates.

■ Drexelbrook Associates and Kay also argue that Dotson did not timely file her action against Kay. Drexelbrook Associates and Kay specifically contend that Kay was not named in the original complaint, was not served with the original complaint, and the amended complaint did not attempt to change or correct his name from how it was plead in the original complaint. We agree.

Kay was not named anywhere in the original complaint. Although he is the general partner of Drexelbrook Associates and the president of Drexelbrook, Kay had no notice that he was being charged individually and he was never arguably brought before the PHRC as a named party. Thus, adding him in the amended complaint was not the correction of a named Respondent, but the addition of a Respondent. Because the 180 day statute of limitations had lapsed before the amendment, the PHRC had no jurisdiction to address any claims against Kay. Accordingly, Dotson did not timely file her action against Kay.

For all of the above reasons, we affirm in part, and reverse in part the order of the PHRC.

### ORDER

AND NOW, this 27th day of June, 2012, the July 25, 2011 Final Order of the Pennsylvania Human Relations Commission is affirmed with respect to Drexelbrook As-

sociates, and reversed with respect to L. William Kay, II.