888 F.2d 270
 50 Fair Empl.Prac.Cas. 1826,
51 Empl. Prac. Dec. P 39,379, 58 USLW 2275
 Elizabeth McNASBY, Catherine Beres, Henrietta Elliott,
Margaret Felmey, Ann Jacyszyn, Virginia Knowles, Lorraine
Mason, Edith McGrody, Betty (Ponath) Moyer, Joan Murphy,
Eleanor Neyer, Marie Pekla, and Doris Yocum, on behalf of
themselves and all others similarly situated, Appellants,
v.
CROWN CORK AND SEAL CO., INC. and Sheet Metal Workers'
International Association, AFL-CIO, a/k/a Sheet
Metal Production Workers' Union, Local
266, Appellees.
 No. 88-1893.
 United States Court of Appeals,
Third Circuit.
 Argued May 22, 1989.
Decided Oct. 11, 1989.
Rehearing and Rehearing In Banc
Denied Nov. 8, 1989.
 
 Alan M. Lerner (argued), Jeffrey Ivan Pasek, Paul J. Russoniello, Vernon R. Byrd, Jr., Cohen, Shapiro, Polisher, Shiekman and Cohen, Seth F. Kreimer, Philadelphia, Pa., for appellants.
 Aaron C.F. Finkbiner, III (argued), Arthur S. Gabinet, Dechert, Price & Rhoads, Stephen B. Burbank, Philadelphia, Pa., for appellee, Crown, Cork and Seal Co., Inc.
 Mark P. Muller, Freedman & Lorry, P.C., Philadelphia, Pa., for appellee, Sheet Metal Workers Union, Local 266.
 Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine C. Davis, Asst. Gen. Counsel, Carolyn L. Wheeler, E.E.O.C., Washington, D.C., for amicus curiae, E.E.O.C.
 Before BECKER, STAPLETON and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This protracted employment discrimination case presents several intricate and difficult questions concerning the law of claim preclusion as applied by the federal courts under the full faith and credit statute, 28 U.S.C. Sec. 1738 (1982). At bottom, we must decide whether a decision of the state's highest court affirming a state agency's finding of sex discrimination and the agency's award of limited damages to a group of plaintiffs precludes, by reason of common law or statute, the efforts of those plaintiffs and a class of fellow employees to proceed in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17, to recover make-whole damages that were not provided by the agency's remedy. The district court held that the plaintiffs were precluded on both common law and statutory grounds and granted summary judgment in favor of defendants Crown Cork and Seal Co. ("Crown Cork") and Sheet Metal Production Workers Union, Local 266 (the "Union"). 698 F.Supp. 1264.
 
 
 2
 The plaintiffs raise a plethora of issues on appeal. They contend that the district court erred in holding the suit precluded because: (1) the state statute on which the district court relied only bars subsequent litigation of claims arising under state and municipal laws, not claims based on federal law; (2) common law preclusion is inappropriate because Title VII is a matter of exclusive federal jurisdiction and Pennsylvania would not preclude the litigation of claims over which the initial court lacked jurisdiction; (3) common law preclusion is inappropriate because the plaintiffs did not have the same quality or capacity in the state proceeding that they have here because of their inability to direct the agency proceedings; and (4) plaintiffs' due process rights are denied if their suit is precluded because they did not have a full and fair opportunity to litigate their claims in the state proceedings. Plaintiffs also submit that even if the lead plaintiff, Elizabeth McNasby, is precluded, the intervening plaintiffs and class members are entitled to proceed despite the fact that McNasby was the only plaintiff to file a charge with the United States Equal Employment Opportunity Commission ("EEOC"). Finally, plaintiffs contend that Title VII authorizes the federal courts to give relief supplementary to that provided for by the state, and that, to this extent, Title VII partially repeals section 1738. The defendants counter each of these arguments.
 
 
 3
 In determining the preclusive effect of a state court judgment, we apply the rendering state's law of res judicata. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). We conclude that Pennsylvania common law would not preclude any of the plaintiffs from pursuing their Title VII claims. Pennsylvania common law does not preclude a litigant from litigating in a second action a claim that could not have been raised in the first action because it was not within the jurisdiction of the first court. See McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir.1989). Moreover, regardless of whether Title VII jurisdiction is exclusively federal, the plaintiffs never proceeded in a Pennsylvania court that could have asserted jurisdiction over a Title VII claim; rather, the plaintiffs proceeded directly from the state agency to the Commonwealth Court, a court of very limited original jurisdiction.
 
 
 4
 Furthermore, although it is a close issue, we agree with the plaintiffs that the district court erred in its interpretation of the Pennsylvania preclusion statute. We believe that the Pennsylvania Supreme Court would follow the decision of the en banc Pennsylvania Superior Court which held that the relevant Pennsylvania statute, 43 Pa.Stat.Ann. Sec. 962(b) (Purdon Supp.1989), concerns only the necessity of bringing all state and municipal discrimination claims in a single suit and hence does not speak to the relationship between state and federal discrimination laws. See Lukus v. Westinghouse Electric Corp., 276 Pa.Super. 232, 268-69, 419 A.2d 431, 450-51 (1981) (en banc). We thus find no statutory preclusion.
 
 
 5
 Consequently, we believe that Pennsylvania law does not preclude the plaintiffs' Title VII suit, and that they should be allowed to proceed in the district court. We will therefore vacate the judgment of the district court and remand for further proceedings.[1]
 
 I. HISTORY OF THE CASE
 A. The State Agency Proceedings
 
 6
 In February 1970, eleven female employees of Crown Cork, including McNasby, visited the Pennsylvania Human Rights Commission ("PHRC"), and alleged that Crown Cork, in concert with the Union, had engaged in a practice of discriminating against female employees with respect to the terms and conditions of their employment. In December 1970, the PHRC filed a "Commissioner's Complaint" against Crown Cork and the Union, alleging in general terms that they had violated the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Stat.Ann. Secs. 951-963 (Purdon 1964 & Supp.1989), which provides in relevant part as follows:
 
 
 7
 It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ...
 
 
 8
 (a) For any employer because of the ... sex ... of any individual to ... discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.
 
 
 9
 * * *
 
 
 10
 (e) For any ... labor organization ... to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ... or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.
 
 
 11
 Id. Sec. 955. The Commissioner's Complaint was brought on behalf of all female employees of Crown Cork.
 
 
 12
 On May 17, 1971, McNasby filed a complaint with the EEOC, based on the same allegedly discriminatory actions by Crown Cork and the Union. In June 1971, McNasby filed a complaint with the PHRC against Crown Cork and the Union, alleging that "the respondents consorted in the lay-off of the complainant because of her sex, FEMALE, and have prevented her, as well as all other females, from enjoying equal job opportunities at Crown Cork and Seal Company." McNasby's PHRC Complaint at 1 (June 11, 1971), J.A. at 60.
 
 
 13
 In October 1974, while the Commissioner's Complaint and McNasby's complaint were still pending before the PHRC, the Pennsylvania Supreme Court held that a Commissioner's complaint that alleges only general charges of discrimination is invalid under the PHRA. See PHRC v. United States Steel Corp., 458 Pa. 559, 562-64, 325 A.2d 910, 912-13 (1974). Because the Commissioner's Complaint against Crown Cork was similar to the one invalidated in United States Steel, the Commissioner filed an extensive amended complaint in October 1975, alleging with particularity the claims of sex discrimination. The amended complaint contained class-wide charges of sex discrimination as well as individual charges on behalf of thirteen women, ten of whom are among the thirteen named plaintiffs in the present action. In accordance with PHRC policies at the time, the investigation and hearing were conducted solely by the PHRC. The two Commissioner's Complaints were joined with McNasby's complaint for purposes of the administrative proceedings.
 
 
 14
 On August 28, 1981, more than ten years after the initial Commissioner's Complaint was filed, the PHRC issued its opinion, which found that Crown Cork and the Union had discriminated against Crown Cork employees on the basis of sex. In particular, the PHRC found that "at all times since July 9, 1969 [the effective date of the PHRA], Crown has maintained, and the Union has acquiesced in the maintenance of an effectively sex-segregated system of job classification within the bargaining unit represented by Local 266," PHRC Op. at 5 (Aug. 28, 1981), J.A. at 105, and that the women's jobs had paid significantly less than the men's jobs. Id. at 20, J.A. at 120. The PHRC further found that "[a]t all times from July 9, 1969 to December 31, 1975, Crown, with the Union's acquiescence, has effectively maintained a sex-segregated system of plant, department, and shift seniority for all of its production and maintenance unit employees," id. at 6, J.A. at 106, and that this system had worked to disadvantage female employees in terms of their transfer, promotion, layoff and recall rights, see id. at 6-10, J.A. at 106-10. The PHRC additionally found that "[a]t all times since July 9, 1969 Local 266 has effectively refused to investigate or prosecute the numerous grievances of its female members alleging sex discrimination at Crown." Id. at 23, J.A. at 123.
 
 
 15
 Pursuant to its findings, the PHRC awarded broad injunctive relief, but only limited monetary relief. The PHRC found that there was an "absence of sufficient evidence relating to the period following December 31, 1975," from which damages could be calculated, and thus it awarded no relief to any complainant for post-1975 violations. Id. at 56, J.A. at 156. The PHRC found that McNasby's 1971 complaint was specific enough to toll the PHRA's ninety-day statute of limitations with respect to McNasby, but that it was not particular enough to toll the statute for the rest of the class. Id. at 27, J.A. at 127. It awarded McNasby backpay from the date of her PHRC complaint until the end of 1975. Id. at 34, J.A. at 134.
 
 
 16
 The PHRC also found that the 1970 Commissioner's complaint was too general to toll the statute of limitations for the class and that the 1975 complaint did not relate back to 1970. Id. at 26, 27, J.A. at 126, 127. It thus found that all claims of discrimination relating to the period before ninety days prior to the filing of the 1975 complaint (in other words, claims arising prior to July 30, 1975) were barred by the statute of limitations. Id. Consequently, those women who had been employed at Crown Cork after July 30, 1975 were awarded backpay only for the period of July 30 through December 31, 1975, and those women who did not work for Crown Cork after July 30, 1975 received nothing. Id. at 34, J.A. at 134. The PHRC also declined to hold the Union jointly liable for backpay. Id. at 57, J.A. at 157. The PHRC nevertheless noted its view that "although procedural deficiencies in the processing of this matter have precluded a full remedy for all the wrongs found to have been committed, [this case] nevertheless present[s] one of the most blatant patterns of sex discriminatory employment practices that has ever been brought to this Commission's attention." Id. at 38, J.A. at 138.
 
 B. The State Court Proceedings
 
 17
 The named plaintiffs other than Betty Ponath Moyer retained counsel and filed an appeal with the Pennsylvania Commonwealth Court on October 29, 1981.[2] The plaintiffs also wrote to the PHRC, requesting it to reconsider its determination. See Plaintiffs' Letter Br. to PHRC at 1 (March 10, 1982), J.A. at 781. The Commission's staff attorneys also filed a formal motion for reconsideration. On April 28, 1982, the PHRC denied supplementary relief to the complainants. See PHRC Op. (April 28, 1982), J.A. at 172-84.
 
 
 18
 In their action in the Commonwealth Court, the plaintiffs alleged that the statute of limitations had been tolled in 1970; that the PHRC had deprived the plaintiffs of equal protection and due process rights; and that the PHRC had abused its discretion by failing to award class-wide relief for violations that occurred prior to July 30, 1975 or after December 31, 1975 and by failing to hold the Union jointly liable. While that case was pending before that court, McNasby amended her EEOC charge, and, on September 29, 1982, she received a Notice of Right to Sue from the EEOC.[3] She promptly filed this Title VII action in the district court for the Eastern District of Pennsylvania against Crown Cork and the Union, on behalf of a class of female employees and former employees of Crown Cork, based on essentially the same facts as the PHRC action.[4] The case was stayed by agreement of counsel and then placed on the district court civil suspense docket pending the outcome of the state court litigation.
 
 
 19
 On September 28, 1983, the Commonwealth Court issued its opinion and order, rejecting all of plaintiffs' contentions and affirming the order of the PHRC. See Murphy v. PHRC, 77 Pa.Cmwlth. 291, 465 A.2d 740 (1983). Plaintiffs then appealed to the Pennsylvania Supreme Court, which also affirmed. See Murphy v. PHRC, 506 Pa. 549, 486 A.2d 388 (1985). Next, plaintiffs appealed to the United States Supreme Court, which dismissed the appeal for want of a substantial federal question. See Murphy v. PHRC, 471 U.S. 1132, 105 S.Ct. 2669, 86 L.Ed.2d 689, (1985).
 
 C. The District Court Proceedings
 
 20
 In December 1985, the case was placed back on the active list in the district court. Defendants moved to dismiss, or in the alternative for summary judgment, on the ground that the federal suit was barred by the doctrine of claim preclusion. Initially, the district court denied this motion, reasoning that the basically injunctive remedy awarded by the PHRC, which was issued to serve the public interest rather than to redress private wrongs, should not bar plaintiffs' claims for the make-whole remedy that is authorized by Title VII. See 656 F.Supp. 206 at 207 (D.C.Pa.1987), J.A. at 615. The district court additionally found that both Crown Cork and the Union were bound under principles of issue preclusion by the findings established in the final decision of the PHRC that they engaged in sex discrimination against the plaintiffs. See Dist.Ct.Op. Granting Partial Summary Judg. to Pl's at 1 (Jan. 14, 1987), J.A. at 594.[5]
 
 
 21
 On June 15, 1988, Crown Cork again moved for summary judgment on the ground of claim preclusion based on this court's decision in Gregory v. Chehi, 843 F.2d 111 (3d Cir.1988), which held that litigation of a federal claim can be barred by prior litigation of a state claim based on the same transaction even if "the relief obtainable in the two forums varies to some degree." Id. at 118. On November 1, 1988, the district court granted Crown Cork's motion and dismissed the suit with prejudice.
 
 
 22
 Noting that the federal courts are obliged to look to state law in determining the preclusive effect of a state court judgment, the district court reasoned that the plaintiffs' claims were precluded both by Pennsylvania common law and a Pennsylvania statute. In terms of the common law, the district court accepted the premise that Pennsylvania would not preclude claims that are subject to exclusive federal jurisdiction. It noted that this court has recently held that federal jurisdiction over Title VII claims is exclusive, see Bradshaw v. General Motors Corp., 805 F.2d 110, 112 (3d Cir.1986), but nevertheless rejected plaintiffs' contention that the instant suit was not barred. It reasoned that "[p]laintiff has not shown that Title VII was within the exclusive jurisdiction of the federal courts at the times relevant to this case. Because the Pennsylvania courts considered themselves free to hear Title VII claims, McNasby's action would be precluded under Pennsylvania law." 698 F.Supp. at 1268, J.A. at 991. The Court relied in this regard on Chmill v. City of Pittsburgh, 488 Pa. 470, 412 A.2d 860 (1980), discussed below in footnote 8.
 
 
 23
 Furthermore, the district court found that Pennsylvania common law precludes McNasby's claim. Relying on language in Gregory that mandated "that a cause of action or 'claim' ... be defined broadly in transactional terms," 698 F.Supp. at 1268, J.A. at 992, it found that the causes of action in state and federal court were identical for claim preclusion purposes because they were based on the same set of facts. Moreover, the court rejected an argument that McNasby was suing in a different "quality" or "capacity" in federal court. Additionally, the court found that "[the] Plaintiff ha[d] not shown the existence of any exceptions to the PHRC preclusion statute," 43 Pa.Stat.Ann. Sec. 962(b), which prohibits subsequent actions based on the same "grievance" as a PHRA action. 698 F.Supp. at 1270, J.A. at 995. Finally it found, pursuant to Gregory, that the mere fact that the plaintiffs received a remedy more limited than that available under Title VII did not bar preclusion.[6] This appeal followed.
 
 II. CLAIM PRECLUSION
 
 24
 "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Migra v. Warren City School District Board of Education, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).[7] At issue here is whether plaintiffs are precluded from bringing their Title VII claim, which has never been heard by any court, because of its relationship to the claims litigated by the plaintiffs (other than Moyer) in the Pennsylvania state court system. We will begin by addressing claim preclusion as it affects McNasby. We will then address claim preclusion with respect to the other plaintiffs and class members.
 
 
 25
 The Supreme Court has interpreted the "full faith and credit clause" of 28 U.S.C. Sec. 1738 to mean that "a federal court [must] refer to the preclusion law of the State in which judgment was rendered." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). In other words, "[s]ection 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Construction Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). This rule applies when assessing both the issue preclusive and the claim preclusive effect of the prior state court judgment. See Migra, 465 U.S. 75, 104 S.Ct. 892 (1984) (applying section 1738 in the context of claim preclusion). Hence, in deciding whether McNasby's Title VII claim is barred, we must apply Pennsylvania's claim preclusion law.
 
 A. Common Law Preclusion
 
 26
 Crown Cork first contends that McNasby's suit is barred by common law preclusion. Pennsylvania common law provides that claim preclusion applies to bar a subsequent suit when four factors have been met. In order for a second action to be precluded, "[t]he two actions must share an identity of the (1) thing sued on; (2) cause of action; (3) persons and parties to the action; and (4) quality or capacity of the parties suing or sued." Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988) (citing Dusquesne Slag Products Co. v. Lench, 490 Pa. 102, 105, 415 A.2d 53, 56 (1980)).
 
 
 27
 However, as we held in McCarter, Pennsylvania does not bar the litigation of omitted claims that otherwise meet these four criteria, if those claims could not have been adjudicated by the initial court because that court would not have had subject matter jurisdiction over them. See McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir.1989). Indeed, in expressing our belief as to Pennsylvania law in McCarter, we noted that the rule that no preclusion attaches when the first court did not have jurisdiction over the claim brought in the second action is "nearly universal[ ]." Id.; see also Marrese, 470 U.S. at 382, 105 S.Ct. at 1333 ("[C]laim preclusion generally does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case ... because of the limitations on the subject matter jurisdiction of the courts....' " (quoting Restatement (Second) of Judgments Sec. 26(1)(c) (1982)).
 
 
 28
 The reasoning behind this rule is that when there were barriers that prevented the litigant from advancing her theory in the first suit, it is "unfair to preclude [a litigant] from a second action in which [she] can present those phases of the claim which [she] was disabled from presenting in the first." See Restatement (Second) of Judgments Sec. 26 comment c, at 236. Thus, in McCarter, we held that Pennsylvania would not preclude litigation of claims subject to exclusively federal jurisdiction. McCarter, 883 F.2d at 201-202.
 
 
 29
 In litigating this case, the parties have raised issues with respect to the interplay of section 1738 and Title VII that border on the metaphysical. In the first place, the parties differ as to whether we should apply our own decision that Title VII jurisdiction is exclusively federal, see Bradshaw, 805 F.2d 110, or whether section 1738 requires us to defer to the opinion of the Pennsylvania courts on the matter, an issue reserved in McCarter. See McCarter, at 200. This issue is significant because Crown Cork contends that Pennsylvania believes that it has concurrent jurisdiction over Title VII actions. See Chmill v. City of Pittsburgh, 488 Pa. 470, 412 A.2d 860 (1980).[8] The parties also dispute whether the relevant question is our (or Pennsylvania's) current opinion as to the exclusivity of Title VII jurisdiction, or whether instead we should look to the law as it existed at the time that the plaintiffs appealed to the Commonwealth Court, before we issued our opinion in Bradshaw.
 
 
 30
 Fortunately, we need not enter this quagmire, because in this case, it is clear that McNasby never pursued her state law claim in an adjudicative body that could have asserted original jurisdiction over her Title VII action. To the contrary, she proceeded straight from the PHRC to the Commonwealth Court to the Pennsylvania Supreme Court to the United States Supreme Court. None of these courts has original jurisdiction to hear a claim arising under Title VII.
 
 
 31
 Plaintiffs did not and could not have raised their Title VII claims before the PHRC, as the PHRC was created solely to administer the PHRA. See 43 Pa.Stat.Ann. Sec. 956 (Purdon Supp.1989). Under Pennsylvania law, " '[t]he power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable.' " PHRC v. St. Joe Minerals Corp., 476 Pa. 302, 310, 382 A.2d 731, 735-56 (1978) (citation omitted). Thus the PHRC does not have the power to entertain Title VII claims. Moreover, at the time McNasby filed her suit in Commonwealth Court, its original jurisdiction was limited to cases brought by or against the Commonwealth. See 42 Pa.Cons.Stat.Ann. Sec. 761 (Purdon 1981). As for the Pennsylvania Supreme Court, it has original jurisdiction only over cases of (1) habeas corpus; (2) "[m]andamus or prohibition to courts of inferior jurisdiction;" and (3) "[q]uo warranto as to any officer of Statewide jurisdiction." Id. Sec. 721. Finally, McNasby's Title VII suit clearly fell outside the original jurisdiction of the United States Supreme Court. See U.S. Const. art. III, Sec. 2, cl. 2. Because McNasby proceeded only in adjudicative bodies of limited original jurisdiction, where she could not have asserted her Title VII claim, we conclude that Pennsylvania common law does not bar the subsequent litigation of McNasby's Title VII action in federal court.
 
 
 32
 Crown Cork concedes that the Commonwealth Court lacked original jurisdiction to entertain a Title VII action, but raises several arguments as to why Pennsylvania would apply common law preclusion nonetheless.
 
 
 33
 First, Crown Cork argues that the PHRC had "[original] jurisdiction over discrimination claims in general," and that it does not matter "under Pennsylvania law whether they were labeled 'PHRA' or 'Title VII,' " because the two statutes are "functional[ly] identi[cal]." Defendant's Letter Br. at 7-8. However, what matters for preclusion purposes is whether the actual cause of action asserted in the second suit could have been asserted in the first. For example, although one could argue that in many ways the federal and Pennsylvania securities acts are functionally identical, in McCarter we found that Pennsylvania would not bar a suit based on federal securities law despite the state's dismissal of a state securities suit, because the state court did not have jurisdiction over the federal cause of action. See McCarter, 883 F.2d at 201-202; see also Restatement (Second) of Judgments Sec. 26, illustration 2, at 237 (1982) ("A Co. brings an action against B Co. in a state court under a state antitrust law and loses on the merits. It then commences an action in a federal court upon the same facts, charging violations of the federal antitrust laws, of which the federal courts have exclusive jurisdiction. The second action is not barred."). Thus, McNasby's Title VII claim is different from her parallel state law claim (at least for preclusion purposes), and the PHRC had jurisdiction to entertain only the latter.[9]
 
 
 34
 Second, Crown Cork contends that claim preclusion is available because the Commonwealth Court had appellate jurisdiction to review the PHRC determination. Crown Cork cites Kremer, in which the Supreme Court noted that a "judicial affirmance of an administrative determination is entitled to preclusive effect." 456 U.S. at 481 n. 21, 102 S.Ct. at 1897 n. 21. From this statement, Crown Cork concludes that "any limits on the original jurisdiction of the [Commonwealth Court] are irrelevant." Defendant's Letter Br. at 2. We disagree. Kremer merely held that preclusion can attach after limited judicial review of agency proceedings. The Court's further conclusion that preclusion did attach depended on its construction of the New York statute at issue in that case. See 456 U.S. at 466-67, 102 S.Ct. at 1889-90; infra at 280. Under section 1738, however, we must apply Pennsylvania law in this case, and we decided in McCarter that Pennsylvania common law makes the original jurisdiction of some state tribunal not only relevant, but necessary. See McCarter, at 199. Because neither the PHRC nor the Commonwealth Court had original jurisdiction to hear McNasby's Title VII claim, common law claim preclusion is unavailable under Pennsylvania law.
 
 
 35
 Third, Crown Cork contends that this court's opinions in Gregory v. Chehi, 843 F.2d 111 (3d Cir.1988), and Davis v. United States Steel Supply, 688 F.2d 166 (3d Cir.1982), cert. denied, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983), are controlling. We disagree. Although both Gregory and Davis precluded civil rights plaintiffs from raising federal claims in federal court, each case involved an appeal of a municipal agency determination to the Pennsylvania Court of Common Pleas, a court of general original jurisdiction. See 843 F.2d at 114; 688 F.2d at 168-69. Thus we specifically noted in Gregory that the plaintiff could have brought his section 1983 action in that court. See 843 F.2d at 119 n. 5. In both cases, therefore, plaintiffs had the opportunity that McNasby has never had--to have a state court hear her federal claim.
 
 
 36
 Fourth, Crown Cork contends that Pennsylvania has embarked upon a scheme to make the PHRC the exclusive arbiter of discrimination claims. However, we are unpersuaded that Pennsylvania has evinced by statute a specific intent to bar subsequent Title VII claims, in derogation of its common law rule that permits litigation of omitted claims over which the first court would not have jurisdiction. See infra at 279-82.
 
 
 37
 Finally, Crown Cork contends that Pennsylvania common law would preclude a claim based on the same " 'nub of the controversy' " as a prior claim, even if the first court did not have jurisdiction over the second claim. As discussed above, we rejected this contention in McCarter, in which we stated our belief that under Pennsylvania common law preclusion does not attach when the first court did not have jurisdiction over the omitted claim. See McCarter, at 199. For the foregoing reasons, we do not believe that Pennsylvania common law precludes McNasby from bringing this Title VII action. We thus hold that the district court erred in dismissing her claim on common law res judicata grounds.
 
 B. Statutory Preclusion
 
 38
 Crown Cork contends alternatively that McNasby's Title VII claim is precluded based on a Pennsylvania statute, which provides (with one exception not relevant to this case) that:
 
 
 39
 nothing contained in [the PHRA] shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination because of race, color, religious creed, ancestry, age, sex, national origin or handicap or disability, but as to acts declared unlawful by [the PHRA], the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein.
 
 
 40
 43 Pa.Stat.Ann. Sec. 962(b) (Purdon Supp.1989) (emphasis added). Section 962(b) serves three functions. The first part of the first sentence makes clear that the PHRA is not intended to preempt municipal ordinances or charters or other state laws. The second part of the first sentence precludes a complainant from relitigating a matter "based on the same grievance" as a matter brought by the complainant before the PHRC. Finally, the second sentence prohibits a litigant from pursuing a PHRA claim if she has instituted any action based on the same grievance without invoking the PHRA procedures. Crown Cork claims that, under the plain language of the second part of the first sentence, Pennsylvania would preclude a Title VII suit based on the same grievance as a case decided under the PHRA.
 
 
 41
 In support of its position, Crown Cork contends that the instant case is essentially indistinguishable from Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), a case in which the Supreme Court held that a plaintiff's Title VII claim was precluded because the plaintiff had previously brought a claim based on the same transaction before the New York State Division of Human Rights ("NYDHR") and had appealed the NYDHR's adverse judgment to the Appellate Division of the New York Supreme Court. See 456 U.S. at 463-64, 102 S.Ct. at 1887-88.[10] In Kremer, the Court presumed that pursuant to a New York statute, which is quite similar to Pennsylvania's section 962(b), New York would preclude a litigant who had resorted to the judicial processes of the state from raising a subsequent Title VII claim based on the same grievance in federal court.[11]
 
 
 42
 Crown Cork also contends that this Court's holding that Title VII jurisdiction is exclusively federal, see Bradshaw v. General Motors Corp., 805 F.2d 110 (3d Cir.1986), does not affect the applicability of section 962(b) as a bar to Title VII actions brought after a PHRA action has been pursued in the state courts. It notes that the Supreme Court in Kremer expressly declined to reach the question whether jurisdiction over Title VII actions is exclusively federal. See 456 U.S. at 479 n. 20, 102 S.Ct. at 1896 n. 20. Hence, Crown Cork argues that the Court implicitly held that a state may by statute bar subsequent litigation, even if the federal claim sought to be asserted in the second action is within the exclusive jurisdiction of the federal courts. And the Court made this holding explicit in Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), in which it noted that a state may bar litigation of a claim within exclusive federal jurisdiction so long as the federal statute does not create an exception to section 1738. Id. at 383, 386, 105 S.Ct. at 1333, 1335.[12]
 
 
 43
 Although the issue is extremely close, we are persuaded that Pennsylvania would not construe section 962(b) as a bar to McNasby's action. As the plaintiffs point out, the Court in Kremer was merely predicting New York law; the Court's statement that New York would interpret its statute to bar subsequent Title VII actions does not bind us to conclude that Pennsylvania would interpret its similar statute similarly. See Davis v. United States Steel Supply, 688 F.2d 166, 187 (3d Cir.1982) (Gibbons, J., dissenting) (noting that the Court "could not instruct in [Kremer ] on the law of Pennsylvania. [I]t dealt, rather with a specific provision in the New York Human Rights Law."), cert. denied, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). Furthermore, the Supreme Court's assertion that the New York law would bar a subsequent Title VII action is not particularly persuasive as a guide to predicting Pennsylvania's interpretation of its own statute because the plaintiff in Kremer conceded the point, and the Supreme Court settled the issue with one conclusory sentence.
 
 
 44
 Plaintiffs argue that the second part of the first sentence of section 962(b) merely bars a litigant who has maintained a PHRA action from later suing on the same grievance under a municipal ordinance or another state law and that the statute is inapplicable to subsequent suits brought under federal laws, like Title VII. They rely on the nearly unanimous en banc decision of the Pennsylvania Superior Court, an intermediate appellate court, in Lukus v. Westinghouse Electric Corp., 276 Pa.Super. 232, 419 A.2d 431 (1980).[13] In Lukus, the plaintiff had brought a Title VII suit in federal court but abandoned that suit and sought to maintain a PHRA suit in the state system. Judge Spaeth, writing for the court, construed section 962 as follows:
 
 
 45
 The provision makes clear that the Legislature was concerned with the relationship between the PHRA and any other 'municipal ordinance, municipal charter, or ... law of this Commonwealth relating to discrimination;' nowhere does the Legislature address the relationship between the PHRA and federal discrimination laws. If the Legislature wished to limit the relief available under the PHRA to instances where the aggrieved individual had not sought federal remedies, we should have expected the Legislature to say so, especially since it has directed that the word "action (which is used in the second sentence of section 962(b)) shall normally be interpreted as '[a]ny suit or proceeding in any court of this Commonwealth,' " i.e., not "in any court of the United States."
 
 
 46
 276 Pa.Super. at 269, 419 A.2d at 450-51 (emphasis added). The court thus concluded that the PHRA suit was not barred by the prior Title VII action.
 
 
 47
 We concede that, were it not for Lukus, we might well conclude that Pennsylvania would read the "any other action ... based on the same grievance" language of section 962(b) as bar to subsequent federal claims. However, Lukus alters our view. First, we believe that under the language and reasoning of Lukus, McNasby's Title VII claim would not be barred by section 962(b). It is true, as Crown Cork points out, that the court in Lukus was construing the meaning of the second sentence of section 962(b), whereas in this suit we must predict how the Pennsylvania Supreme Court would interpret the second part of the first sentence. However, Crown Cork presents no good reason why Pennsylvania would believe that the two consecutive sentences, which are written in parallel language, should be construed differently. Furthermore, the reasoning espoused in Lukus applies equally to the two sentences. The Superior Court found that section 962(b) does not "address the relationship between the PHRA and federal discrimination laws." Lukus, 276 Pa.Super. at 269, 419 A.2d at 450-51. Under this view, the statute could not bar federal claims after adjudication of parallel state claims any more than it bars state claims after adjudication of parallel federal claims. We believe that, to the extent that the Pennsylvania Supreme Court follows Lukus, it would necessarily conclude that the first sentence of the statute does not refer to federal law, but simply bars the relitigation under other state and municipal laws of a grievance brought before the PHRC.
 
 
 48
 Second, we believe that the Pennsylvania Supreme Court would follow Lukus. We note that "[d]ecisions of intermediate appellate courts of the state, while not conclusive, are 'indicia of how the state's highest court might decide' the issue." McGowan v. University of Scranton, 759 F.2d 287, 291 (3d Cir.1985) (citation omitted). That would seem to be especially true when the intermediate court sits en banc, and almost unanimously joins the same opinion. Moreover, we believe that the Superior Court is persuasive in its analysis.
 
 
 49
 As the Superior Court noted, the first part of the first sentence of the statute (the non-preemption section) suggests that the Pennsylvania legislature had only state and local statutes in mind. Moreover, parsing the language of the statute, we note that in the first sentence the statute says that it does not preempt state or municipal laws "but " one cannot later bring another suit based on a grievance brought under the PHRA. In common usage, the conjunction "but" is used to signify an exception to or limitation of what is implied by the content of the previous clause. See Webster's Third New International Dictionary at 303 (1966). Consequently, the wording of the statute suggests that the first sentence should be read to mean that although municipal and state laws are not preempted, a multiplicity of suits cannot be based on those statutes. Although the language of the statute is not unambiguous, the use of the conjunction "but" rather than "and" suggests that the legislature understood the statement in the second clause to encompass only the statutes with which the first clause was concerned.
 
 
 50
 Finally, we note that the original version of section 962(b), which contained the preclusion language, was passed in 1955. It thus preceded the enactment of Title VII and the explosion of federal antidiscrimination litigation by a number of years. The intent of the legislature is relevant in interpreting the ambiguity in section 962(b). In light of the chronology, it is impossible to conclude that the Pennsylvania legislature that adopted section 962(b) intended to preclude actions based on federal laws that did not yet exist.
 
 
 51
 The only argument that Crown Cork makes as to why the Supreme Court would not follow the en banc Superior Court is as follows. Crown Cork asserts that Lukus is "surely wrong" because "no rational state legislature would choose to preclude state law claims but not federal ones." Appellee's Br. at 17-18. We are not so persuaded. We simply do not agree with Crown Cork that it is unbelievable that a state would elect to give a litigant her choice of one state remedy as well as allowing her to pursue a Title VII claim separately, especially because there is no way for a litigant to join a Title VII claim to the appeal of a PHRC determination. See supra at 277-278. Compare Gregory v. Chehi, 843 F.2d 111, 119 n. 5 (3d Cir.1988) (noting that "plaintiff could have pursued his [federal] remedy ... in the state court, which had concurrent jurisdiction with the district court to address and remedy violations of federal constitutional law").
 
 
 52
 In summary, Crown Cork has not persuaded us that the Pennsylvania Supreme Court would disagree with the nearly unanimous Superior Court. Moreover, the reasoning of the Superior Court in Lukus clearly leads to the conclusion that section 962(b) is simply irrelevant to this case and thus has no effect on McNasby's ability to pursue her federal claims. We conclude that there is no statutory bar to McNasby's pursuing the instant action.
 
 III. OTHER PLAINTIFFS AND CLASS MEMBERS
 
 53
 Our reasoning as to why McNasby's claim is not precluded is also valid with respect to the other plaintiffs and class members, since they were no more involved in the state court system than McNasby. Most of the other named plaintiffs simply joined in the same appeals through the state court system, and plaintiff Moyer and the class members were not personally involved at all at the state court level (so they may have a stronger claim that they should not be precluded). Crown Cork has made no argument that would distinguish either group from McNasby such that it would be appropriate to preclude that group from litigation, despite our decision to allow McNasby to proceed.
 
 
 54
 Crown Cork also points out that McNasby is the only plaintiff or class member who filed a charge with the EEOC and received a right to sue letter. Filing a charge and receiving a right to sue letter are prerequisites to an individual's bringing suit under Title VII. See 42 U.S.C. Sec. 2000e-5(f)(1), -5(f)(3). However, in Albermarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court held that class members need not have filed their own charges in order to be entitled to relief in a class action. See id. at 414 n. 8, 95 S.Ct. at 2370 n. 8. Consequently, to the extent that the class was properly certified, a question not raised in this appeal, the other female employees and former employees of Crown Cork may piggy-back their backpay claims on McNasby's claim.[14]
 
 IV.
 
 55
 For the foregoing reasons, we will vacate the judgment of the district court and remand this case for further proceedings consistent with this opinion. Parties to bear their own costs.
 
 
 
 [1]
 In light of our conclusion that plaintiffs may proceed, we need not reach plaintiffs' contentions that they served in a different capacity in the state proceedings, that they did not have a full and fair opportunity to litigate in the state action, that the other plaintiffs may proceed even if the lead plaintiff may not, and that Title VII impliedly partially repeals section 1738
 
 
 [2]
 The Commonwealth Court has "exclusive jurisdiction of appeals from final orders of ... Commonwealth agencies," except as otherwise provided. 42 Pa.Cons.Stat.Ann. Sec. 763(a) (Purdon 1981)
 
 
 [3]
 If a charge filed with the EEOC is dismissed or if the EEOC has not filed a civil action against the party named in an employment discrimination charge within 180 days after the charge was filed, the EEOC must, if requested, issue a right-to-sue letter to the complainant. The complainant then has ninety days from the time she receives the letter to file a civil action in district court against the party named in the charge. See 42 U.S.C. Sec. 2000e-5(f)(1), 2000e-5(f)(3)
 
 
 [4]
 There are twelve additional named plaintiffs in the instant action, but McNasby was the only one to file a charge with the EEOC
 
 
 [5]
 On January 15, 1987, the district court entered an order certifying a class, designating McNasby as class representative and allowing two other plaintiffs to intervene as class representatives. However, according to Crown Cork, the district court "later advised counsel that his Orders in this regard would be vacated, if necessary, so that Crown Cork could be heard on the class representation and certification issues." Appellee's Br. at 9 n. 6
 Crown Cork and the Union appealed from the summary judgment determinations. This court dismissed the appeal for want of appellate jurisdiction. See McNasby v. Crown Cork & Seal Co., 832 F.2d 47 (3d Cir.1987), cert. denied, 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988).
 
 
 [6]
 In their rulings, the court rejected plaintiffs' arguments that it would violate federal law to find that the plaintiffs' claims were precluded. Rejecting plaintiffs' contentions about lack of personal participation and inability to be represented meaningfully by counsel in the PHRA proceeding, the court found that the minimum standards of due process had been met. 698 F.Supp. at 1270-1271, J.A. at 997-98. And it rejected plaintiffs' claim that no preclusion could attach because the "state judgment is based on a materially different legal standard from that required by Title VII," 698 F.Supp. at 1272, J.A. at 1002, reasoning that this was no different than plaintiffs' argument that no preclusion should attach because the relief obtainable differed. Finally, relying on Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the district court rejected plaintiffs' contention that Title VII had impliedly repealed the statute that requires the federal courts to defer to the state law of res judicata. 698 F.Supp. at 1273, J.A. at 1004
 
 
 [7]
 Claim preclusion must be distinguished from issue preclusion. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." Migra, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1. This case provides a good example of the difference between claim and issue preclusion. Were we to uphold the district court's application of claim preclusion, we would affirm the dismissal of the plaintiffs' suit. On the other hand, the application of issue preclusion in the instant case would benefit the plaintiffs because many issues were determined in their favor by the PHRC
 
 
 [8]
 In Chmill, the Pennsylvania Supreme Court resolved an appeal, brought by white applicants for firefighting jobs, from a proposed order of the Pittsburgh Civil Service Commission that would have instituted a race-conscious hiring system. The white applicants contended that the order was invalid because it violated Title VII. The Court held that Title VII did not prohibit the Commission's action. Crown Cork contends that Chmill evidences the willingness of the Pennsylvania courts to exercise jurisdiction over Title VII actions
 Plaintiffs read Chmill differently. They contend that Chmill did not involve
 a claim or cause of action arising under Title VII. Rather Title VII was raised as a defense to an order entered by the Pittsburgh Civil Rights Commission. Under the Supremacy Clause of the Constitution, Art. VI, the state courts were bound not to approve the action of the Pittsburgh Civil Rights Commission if that action violated substantive standards established by Congress in Title VII and applicable to the Commission.
 Appellants' Br. at 20. Thus, plaintiffs assert that "[n]othing in the [Chmill ] decision suggests that [the court] would have permitted the appellants to institute an original action arising under Title VII against the Commission in state court." Id.
 Crown Cork also argues that Bradshaw 's declaration that Title VII jurisdiction is exclusively federal was made without discussion and hence should be entitled to little weight. Although acknowledging that the Third Circuit Internal Operating Procedures Chapter 8 binds this court to the prior panel decision, it contends that Pennsylvania is more likely to follow what it contends is the better rule that states have concurrent jurisdiction in Title VII cases, as set forth in Donnelly v. Yellow Freight System, Inc., 874 F.2d 402, 405-09 (7th Cir.1989).
 
 
 [9]
 Furthermore it appears that the PHRA and Title VII are not functionally identical. The primary purpose of the PHRA, as interpreted by the PHRC in the instant case, seems to be to vindicate the public interest, even at the expense of issuing make-whole relief to aggrieved plaintiffs. See Recommendation of Hearing Panel and Supplementary Opinion and Order at 11 (April 16, 1982), J.A. at 181 ("[T]he primary goal of the [PHRC] must be to vindicate the public interest."). In contrast, the primary purpose of Title VII is to make victims of discrimination whole. See generally 42 U.S.C. Sec. 2000e. However, in view of the discussion in the text, we need not reach this issue
 
 
 [10]
 The Court noted that the plaintiff could not be precluded merely because he had availed himself of state administrative procedures. See 456 U.S. at 469-70 & n. 7, 102 S.Ct. at 1891-92 & n. 7. Instead, the Court found that the plaintiff was precluded because he had availed himself of the state's judicial processes. Id
 
 
 [11]
 The New York statute provides:
 Nothing contained in this article shall be deemed to repeal any of the provisions of the civil rights law or any other law of this state relating to discrimination because of race, creed, color or national origin; but, as to acts declared unlawful by [New York's anti-employment discrimination statute], the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.
 N.Y.Exec.Law Sec. 300 (McKinney 1972).
 
 
 [12]
 In an Amicus brief, the EEOC contends that Kremer is distinguishable because in Kremer the plaintiff was barred by issue preclusion rather than claim preclusion. It argues that a state cannot bar through claim preclusion a Title VII claim within the exclusive jurisdiction of the federal courts. See Amicus Br. at 12 n. 2. We find this distinction to be unconvincing. In the first place, Migra squarely rejected the argument that a federal statute could implicitly create an exception to section 1738 for purposes of issue preclusion but not claim preclusion. See 465 U.S. at 83-84, 104 S.Ct. at 897-98. Moreover, Kremer squarely held that Title VII does not impliedly create an exception to section 1738. See 456 U.S. at 467-78, 102 S.Ct. at 1890-96. Finally, Marrese (a claim preclusion case) implied that federal courts must follow state rules that would preclude causes of action within the exclusive jurisdiction of federal courts unless the relevant federal statute implicitly creates an exception to section 1738. See 470 U.S. at 383, 386, 105 S.Ct. at 1333, 1335
 
 
 [13]
 The court was unanimous except for Judge Van der Voort, who concurred in the result without filing an opinion
 
 
 [14]
 The propriety of the class certification remains an open question in the district court. See supra note 5